Parramore Lee **SANBORN** Petitioner

v.

Philip **PARKER** Respondent

No. CIV.A. 3:99CVP678C.

United States District Court,
W.D. Kentucky.
Louisville Division.

Oct. 31, 2003.

Armand I. Judah, Louisville, KY, Milton C. Toby, Perce & Toby, Lexington, KY, for Plaintiff.

David A. Smith, Ian G. Sonego, Attorney General—Criminal Appellate Division, Stephen P. Durham, Department of Corrections, Frankfort, KY, for Defendant.

### MEMORANDUM OPINION AND ORDER

MOYER, United States Magistrate Judge.

This matter is before the Court on Petitioner Parramore Lee Sanborn's ("San-

born") requests for an evidentiary hearing (DNs 101 & 109). Respondent Philip Parker (hereinafter the "Commonwealth") has filed memoranda in response thereto (DNs 102 & 110). The Court, having examined Sanborn's requests in light of the applicable law, has concluded that he is not entitled to an evidentiary hearing.

## I. EVIDENTIARY HEARINGS: THE STANDARD OF REVIEW

A federal evidentiary hearing is intended to insure that a petitioner has a full and fair opportunity to have the factual basis of his claim considered. *Townsend v. Sain,* 372 U.S. 293, 312, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963) *overruled in part on other grounds, Keeney v. Tamayo–Reyes,* 504 U.S. 1, 5, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992). However, "[i]n enacting [the Antiterrorism and Effective Death Penalty Act of 1996 or] AEDPA, Congress placed restrictions on [a court's] discretion to hold an evidentiary hearing." *Sawyer v. Hofbauer,* 299 F.3d 605, 610 (6th Cir.2002). There are two standards which must be used by federal courts in this circuit when determining whether a petitioner is entitled to an evidentiary hearing. The first standard governs those situations where a petitioner failed to develop the factual basis of his claim in state court. In those instances, he must satisfy the more stringent requirements of 28 U.S.C. § 2254(e)(2) in order to merit an evidentiary hearing. The second standard governs those situations where a petitioner was diligent in his efforts to develop the factual basis of the claim. In those instances, a petitioner must show that he is otherwise entitled to a hearing as defined by case law in this circuit. The Court will separately outline the two standards.

### A. 28 U.S.C. § 2254(e)(2)

The first standard is defined by statute and codified at 28 U.S.C. § 2254(e). The governing statute provides in part:

(2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—

(A) the claim relies on—

(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

In *Williams v. Taylor,* 529 U.S. 420, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000) (hereafter "*(Michael) Williams*"), the U.S. Supreme Court clarified this statutory framework.[1] When addressing the petitioner's

---

1. It is also important to note that the Supreme Court clarified the standard of review as it applied to claims which had never been raised in state court. After analyzing the particular requests for an evidentiary hearing in light of the appropriate standard of review, the Supreme Court discussed the "cause and prejudice" standard for procedurally defaulted claims and stated:

Our analysis should suffice to establish cause for any procedural default petitioner may have committed in not presenting these claims to the Virginia courts in the

first instance. Questions regarding the standard for determining prejudice that petitioner must establish to obtain relief on these claims can be addressed by the Court of Appeals or the District Court in the course of further proceedings.

*(Michael) Williams,* 529 U.S. at 444, 120 S.Ct. 1479. This is similar to what other courts have said regarding discovery relating to claims that have purportedly been procedurally defaulted. *See, e.g., Payne v. Bell,* 89 F.Supp.2d 967, 970 (W.D.Tenn.2000) (holding that a petitioner may seek discovery "to devel-

request, a district court must first decide "whether the factual basis [for each claim] was indeed developed in state court, a question susceptible, in the normal course, of a simple yes or no answer." (*Michael*) *Williams*, 529 U.S. at 431, 120 S.Ct. 1479. If the factual basis for a particular claim was developed, then no evidentiary hearing with respect to that claim is necessary. However, if the factual basis was not developed in state court, then a district court reviews the petitioner's actions to determine if he "failed to develop the factual basis of a claim in State court proceedings." *Id.* at 431, 120 S.Ct. 1479 (quoting § 2254(e)(2)).

To determine if the petitioner failed to develop the factual basis of the claim, a district court must review the petitioner's "efforts in state court." *Id.* If the petitioner "did *not* 'fail to develop' the claim in state court, the statute does not bar an evidentiary hearing." *Thompson v. Bell,* 315 F.3d 566, 594 (6th Cir.2003) (emphasis added). The failure to develop the factual basis of claim must reflect a "lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." (*Michael*) *Williams,* 529 U.S. at 432, 120 S.Ct. 1479. As the Supreme Court observed:

> To say a person has failed in a duty implies he did not take the necessary steps to fulfill it. He is as a consequence, at fault and bears responsibility for the failure. In this sense, a person is not at fault when his diligent efforts to perform an act are thwarted, for example, by the conduct of another or by happenstance.

*Id.* Moreover, the question is not whether the facts could have been discovered but instead whether the prisoner was diligent in his efforts. The purpose of the fault component of "failed" is to insure the prisoner undertakes his own diligent search for evidence. Diligence for purposes of § 2254(e)(2) depends upon whether the petitioner made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court; it does not depend upon whether those efforts could have been successful. To satisfy the diligence requirement, in the usual case a petitioner must "at a minimum seek an evidentiary hearing in state court in the manner prescribed by state law." *Id.* at 437, 120 S.Ct. 1479.

> "Comity ... dictates that when a prisoner alleges that his continued confinement for a state court conviction violates federal law, the state courts should have the first opportunity to review this claim and provide any necessary relief." For state courts to have their rightful opportunity to adjudicate federal rights, the prisoner must be diligent in developing the record and presenting, if possible, all claims of constitutional error. If the prisoner fails to do so, himself or herself contributing to the absence of a full and fair adjudication in state court, § 2254(e)(2) prohibits an evidentiary hearing to develop the relevant claims in federal court, unless the statute's other stringent requirements are met.

(*Michael*) *Williams,* 529 U.S. at 437, 120 S.Ct. 1479 (internal citations omitted). However, if the petitioner did fail to develop the claim in state court, he must show compliance with §§ 2254(e)(2)(A) and (B) to warrant an evidentiary hearing. (*Michael*) *Williams,* 529 U.S. at 435, 120 S.Ct. 1479 ("Though lack of diligence will not bar an evidentiary hearing if efforts to discover the facts would have been in vain, *see* § 2254(e)(2)(A)(ii), and there is a convincing claim of innocence, *see*

---

op those claims which are properly before the court, *to obtain a factual basis on which to excuse procedural default,* or to determine

whether to request an evidentiary hearing") (emphasis added).

§ 2254(e)(2)(B), only a prisoner who has neglected his rights in state court need satisfy these conditions."). In summary, (*Michael*) *Williams* essentially sets forth a two-pronged test with respect to the opening clause of § 2254(e)(2). First, a reviewing court must determine if the factual basis of the claim has been developed in state courts. And second, if the claim has not been developed, the Court must determine whether the petitioner was diligent in his efforts to develop the factual basis of that claim.

### B. Situations where the petitioner diligently pursued the factual basis of his claim

The second standard is set forth in case law of this circuit. If § 2254(e)(2) does not preclude an evidentiary hearing, the petitioner is not automatically entitled to a hearing on a particular claim. *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir.2003) (recognizing that "the fact that Bowling is not disqualified from receiving an evidentiary hearing under § 2254(e)(2) does not entitle him to one"); *see also McDonald v. Johnson*, 139 F.3d 1056, 1060 (5th Cir. 1998) ("Consistent with AEDPA's goal of streamlining the habeas process, § 2254(e)(2) specifies the situations where evidentiary hearings are *allowed*, not where they are *required*.") (original emphasis); *Jackson v. Anderson*, 141 F.Supp.2d 811, 828 (N.D.Ohio 2001) (same). The Sixth Circuit has recognized "the discretion and 'inherent authority that a district court always has in habeas cases to order evidentiary hearings to settle disputed issues of material fact.'" *Sawyer*, 299 F.3d at 609–10 (quoting *Abdur'Rahman v. Bell*, 226 F.3d 696, 706 (6th Cir. 2000)). Thus, it has held that a petitioner

is not entitled to an evidentiary hearing unless he can successfully establish the following three criteria: (1) that there are sufficient grounds for release, (2) that relevant facts are in dispute, and (3) that the state courts did not hold a full and fair evidentiary hearing. *Sawyer*, 299 F.3d at 610–11 (quoting *Stanford v. Parker*, 266 F.3d 442, 459 (6th Cir.2001) (citations omitted)).

A district court must examine the elements of the underlying claim in light of the criteria identified in *Sawyer* to determine whether an evidentiary hearing is warranted on the particular claim for which such a hearing is sought. *Id.* Nevertheless, the Sixth Circuit cautioned a petitioner that his "'bald assertions and conclusory allegations do not provide sufficient ground to warrant . . . an evidentiary hearing.'" *Bowling*, 344 F.3d at 512 (quoting *Stanford v. Parker*, 266 F.3d at 460) (citation omitted). Rather, a petitioner must put forth "some evidence" in support of the particular theory he advances, the absence of which justifies the denial of an evidentiary hearing. *Id.* ("Without some evidence in support of Bowling's implausible theory of the case . . . we cannot say that the district court's decision to deny an evidentiary hearing was an abuse of discretion.").

## II. ANALYSIS [2]

Sanborn seeks an evidentiary hearing with respect to seven claims. Keeping in mind the principles previously outlined, the Court will separately address each request.

### (A) Testimony of Rev. Barclay Brown [3]

Sanborn seeks an evidentiary hearing with respect two claims arising from Rev.

---

**2.** To the extent that Sanborn also claims that he is entitled to discovery with respect to these claims, such is beyond the scope of this particular opinion. By a separate decision, the Court addressed and denied Sanborn's requests for discovery. (DN 114).

**3.** In a separate section of Sanborn's memorandum, he also argues that an evidentiary

Barclay Brown's testimony. First, Sanborn argues that Rev. Brown's testimony at the criminal trial violated his attorney-client and priest-penitent privileges. Second, Sanborn argues that he was deprived of effective assistance of counsel to the extent that counsel at his first trial permitted Rev. Brown to speak with Sanborn in a non-confidential setting. The Court will separately address the request for an evidentiary hearing in light of each specific claim.

### 1. Privileged communications

■ With respect to Sanborn's claim that Rev. Barclay Brown's testimony violated his attorney-client and priest-penitent privileges, Sanborn claims entitlement to "an evidentiary hearing as to whether admission of this evidence violated [Sanborn's] right to counsel, a fair trial, and due process." (DN 109, Mem., p. 1). Sanborn claims he did not receive a full and fair hearing on this claim and that "[i]t is not clear that there has been a full and complete recounting of the circumstances surrounding Rev. Brown's conversations with the Petitioner, however, particularly the understanding that Sanborn and his trial attorneys had of Rev. Brown's role." (DN 101, Mem., p. 6).

The first question the Court must ask is whether the factual bases of Sanborn's claims were developed in state court. Sanborn concedes that "[u]pon learning that the prosecution would seek to present the testimony of Rev. Barclay Brown, [he] sought and obtained a pretrial evidentiary hearing on this issue." (DN 109, Mem., p. 2). He further states that both his former attorney and Rev. Brown testified at the

hearing. *Id.* at 7. While Sanborn acknowledges that he "developed facts sufficient to establish the claim," *id.* at 2, he nevertheless believes he is entitled to an evidentiary hearing in these circumstances.

The Commonwealth generally objects to a hearing, noting that "...no federal court has ever held that a habeas corpus petitioner is entitled to have witnesses testify before district court on the very same subjects that those witnesses testified in state court." (DN 110, Mem., pp. 8–9). The Commonwealth further notes that Sanborn asserts additional claims premised on these same facts but maintains that such "does not change the fact that these witnesses would still be testifying about the same events that they could and did testify to in state court." *Id.* Finally, the Commonwealth argues that Sanborn had the opportunity to develop the record but failed to do so. (DN 102, Mem., p. 8).

During the pretrial admissibility hearing, Sanborn through counsel questioned Rev. Brown extensively about the nature of his relationship with Sanborn. (Transcript ("Tr.") of Hr'g, 3/25–27/91, pp. 69–84). Rev. Brown testified that Sanborn's attorney requested an assessment of Sanborn's level of remorse (though defense counsel denied making such a request). Counsel also informed Rev. Brown that he might be used to provide theological testimony about the death penalty. Rev. Brown further stated that with one exception he met privately with the petitioner but did not recall Sanborn's counsel stating that any conversations with Sanborn were confidential. At this pretrial hearing, Sanborn also presented testimony of his original trial counsel, Bette Niemi, who

---

hearing is warranted "so that Petitioner's state of mind may be examined concerning the issues surrounding his perception of Barclay Brown at the time that he discussed any of the events surrounding the death of Barbara Heilman." (DN 101, Mem., p. 10).

Thus, he requests testimony from Rev. Brown, Bette Niemi, and other counsel in order to judge "Rev. Barclay Brown's actual role in relation to the Petitioner's perception of Rev. Brown's role." *Id.*

testified that she explained to Rev. Brown his role as a member of the defense team and that his communications with Sanborn were privileged. (Tr. at 25–54). She told Rev. Brown that he was not to discuss the facts of the victim's murder with Sanborn. Finally, she testified that Rev. Brown often prayed with Sanborn and was to provide an opinion on Sanborn's religious upbringing as well as discuss the theological perspective of the penalties Sanborn was facing.

The trial court denied Sanborn's motion to preclude Rev. Brown's testimony, ruling that neither the attorney-client nor priest-penitent privilege precluded the testimony. (Tr. at 93–96). On direct appeal, the Kentucky Supreme Court concluded that the attorney-client privilege did not apply because communications between the two "were not made with the clear understanding that they were confidential." *Sanborn v. Commonwealth of Ky.* ("*Sanborn II*"), 892 S.W.2d 542, 550 (Ky.1994).[4] With respect to Rev. Brown's relationship to Sanborn, the Court stated:

> It is clear from the record on this appeal that at the first trial it was not made clear that Rev. Brown was only meant to be a consultant for the appellant's defense. It was in fact contemplated that he would be an expert witness called to discuss the death penalty and any remorse shown by the appellant. Because such was the case, [Sanborn] cannot now invoke an attorney-client privilege to disallow Rev. Brown's testimony.

*Id.*

With respect to the priest-penitent privilege, the Kentucky Supreme Court likewise concluded that the communications between Sanborn and Rev. Brown were not confidential and therefore were not protected by the privilege. *Sanborn II*, 892 S.W.2d at 550. The Court found that

there was no evidence that Sanborn sought Rev. Brown's spiritual advice or counseling. In fact, the Court found that Rev. Brown used his involvement with Sanborn for a case study in connection with a seminary class, that he was not employed by defense counsel, and that he was not offered any compensation for his services. Finally, it found that Rev. Brown does not recall whether defense counsel informed him that conversations with Sanborn were confidential.

■ Sanborn claims that admission of the testimony violated evidentiary privileges, which in turn violated his federally protected constitutional rights. He specifically claims that the testimony violated his rights to due process and to a fair trial. (DN 35, Mem., p. 38). The Sixth Circuit has held, however, that "errors in the application of state law, especially rulings regarding the admission or exclusion of evidence, are usually not to be questioned in a federal habeas corpus proceeding." *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir.1988); *see also Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990) ("...federal habeas corpus relief does not lie for errors of state law,..."); *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir.2000) (holding that habeas relief is not warranted "simply because [a federal district court] would have decided the evidentiary question differently than the state court"). There is an exception, however. Only if "an evidentiary ruling is so egregious that it results in a denial of fundamental fairness [does] it . . . violate due process and thus warrant habeas relief." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir.2003); *see also Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir.2000) ("Generally, state-court evidentiary rulings cannot rise to the level of due process

---

4. Sanborn's first conviction on these charges was reversed on appeal in *Sanborn v. Commonwealth of Ky.*, ("*Sanborn I*"), 754 S.W.2d 534 (1988).

violations unless they 'offend[ ] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.' ") (citations omitted).

The factual bases of Sanborn's claims were developed in state court, and this Court can determine whether the state court's evidentiary rulings deprived Sanborn of a fundamentally fair trial without an expansion of the record. The state trial court heard extensive evidence prior to Rev. Brown's testimony. Based upon the testimony of Rev. Brown and Sanborn's counsel from his first trial, the trial court concluded that the relationship between Rev. Brown and Sanborn did not fall within the scope of either privilege. While Sanborn believes he needs additional information to further define their relationship, the Court disagrees. In the end, he points to no disputed or undeveloped facts that require development in order to assess his claim. The habeas corpus statute merely requires development of the factual basis of the claim. It does not require a perfect development. Hindsight is always 20/20, and counsel will always think of questions that should have been asked and angles that should have been taken. However, to permit Sanborn the opportunity to retry his criminal trial in this Court would be contrary to the role federal courts now play in habeas corpus reviews. Accordingly, Sanborn's request for an evidentiary hearing on this issue is **DENIED.**

## 2. Ineffective assistance of counsel [5]

■ Sanborn claims that he was denied effective assistance of counsel because his original trial attorney, Bette Niemi, gave

Rev. Brown unfettered access to Sanborn in a non-confidential setting. (DN 109, Mem., p. 13). Sanborn specifically notes that counsel informed him that his conversations with Rev. Brown were confidential. Niemi claimed to have informed Rev. Brown that such conversations were confidential. Because the Kentucky Supreme Court held that the confidential nature of such communications was not made clear to Rev. Brown, Sanborn maintains that an evidentiary hearing is necessary to resolve this factual dispute. (DN 101, Mem., p. 6). Elsewhere, Sanborn argues that if "the law does not recognize as privileged statements made to an expert whose testimony is expected to be presented at trial, Niemi's performance was deficient, as she believed the communications would be privileged." (DN 109, Mem., p. 15).

The Commonwealth notes that Niemi testified at a preadmissibility hearing regarding the admissibility of Rev. Brown's testimony as well as at the postconviction hearing regarding Sanborn's ineffective assistance of counsel claim. (DN 110, Mem., p. 20). The Commonwealth argues that Sanborn had the opportunity to develop evidence at that hearing regarding Niemi's performance and that the state trial court placed no restrictions on her testimony. *Id.* at 21. The Commonwealth again claims that Sanborn is not seeking to expand the record by presenting witnesses previously unknown to him or evidence that could not have been obtained with the exercise of due diligence. "Rather, Sanborn seeks to essentially re-try his case in federal court with witnesses who testified on the same subjects in State court simply

5. Sanborn claims that he raised this issue in Argument V of the memorandum in support of his petition. However, the Court reviewed that portion of the memorandum and finds no specific reference to an ineffective assistance of counsel claim. While Sanborn makes a passing reference to the Sixth Amendment, he devotes his argument exclusively to the issue of whether the trial court's permitting Rev. Brown's testimony violated his attorney-client and priest-penitent privileges. However, the Court did find this particular argument set forth in Sanborn's Traverse. (DN 58, Mem., p. 34).

because Sanborn's current attorneys wish to ask more questions of those same witnesses." (DN 110, Mem., p. 29).

The first question the Court must ask is whether the factual basis of Sanborn's claim was developed in state court. This claim was presented in Sanborn's motion to vacate, set aside, or correct his sentence which was filed under Rule 11.42 of the Kentucky Rules of Criminal Procedure ("RCr"). (St.Ct.Rec., Vol. XI, p. 1727–28). This is the Kentucky procedure for post-conviction review of a criminal conviction. The trial court granted Sanborn's request for an evidentiary hearing on this issue, and Niemi and Rob Riley, who also represented Sanborn at his first trial, testified at the hearing. (Tr. of Hr'g, 6/12/96 and 8/12–13/96, pp. 113–200).[6] During the hearing, counsel for Sanborn questioned Niemi about her general experience in handling capital cases, how she prepared for Sanborn's first trial, and the information she shared with Sanborn's counsel at the second trial. Tr. at 115–142. Sanborn's counsel did not question her with respect to any discussions she had with Rev. Brown or her understanding of what role he played at the first trial. The Commonwealth, however, did pursue such a line of questioning on cross-examination. Tr. at 144–45. Finally, counsel for Sanborn did question Riley about the role Rev. Brown played in the first trial. Tr. at 163–66.

The trial court overruled Sanborn's RCr 11.42 motion. (St.Ct.Rec., Vol. XIV, pp. 2063–68). With respect to Sanborn's argument that Niemi was ineffective because she allowed Rev. Brown to have non-confidential communications with Sanborn, it held that "[o]ther claims of ineffective assistance of counsel which relate to the performance of counsel at the first trial or appellate counsel are simply not cognizable under RCr 11.42." *Id.* at 2065. The Kentucky Supreme Court likewise rejected his argument that counsel was "ineffective [because she failed] to anticipate the ruling that the discussions with Rev. Brown would be considered not privileged," noting that "[f]ailure to anticipate correctly a future ruling of the court does not present an ineffective assistance claim." *Sanborn v. Commonwealth of Ky.* ("*Sanborn III*"), 975 S.W.2d 905, 913 (1998).

The standard for reviewing a claim of ineffective assistance of counsel is set forth in the seminal case of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Strickland* sets forth the following two-pronged test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Id.* at 687, 104 S.Ct. 2052.

Sanborn premises his request for an evidentiary hearing with respect to this claim on the need to resolve a factual dispute between two witnesses (*i.e.,* Rev. Brown and Niemi). He also seeks a hearing on

---

**6.** In correspondence to counsel, the trial court indicated that the "only basis ... for a hearing a[t] this time on the Defendant's Motion for Relief Under RCr 11.42, is on competency of counsel, and it is on these issues only that I will be hearing ..." (St.Ct.Rec., Vol. XII, pp. 1775–76).

the grounds that Niemi must have been ineffective if the communications between Rev. Brown and Sanborn were not protected by either asserted privilege. However, the Court finds that the factual basis for the claim has been sufficiently developed in the state court proceedings, at both the preadmissibility and RCr 11.42 hearings, for the Court to determine whether counsel was constitutionally ineffective. Moreover, Sanborn points to no disputed facts related to this issue or identifiable evidence not previously considered that would warrant a hearing. The Court can determine whether counsel's performance was "deficient" and whether Sanborn was "prejudiced" thereby without an expansion of the record. Accordingly, Sanborn's request for an evidentiary hearing on this claim is **DENIED.**

**(B) Department of Public Advocacy's failure to provide adequate funding for Sanborn's defense**

■ In his petition, Sanborn maintains that he was deprived of effective assistance of counsel at trial due to the Department of Public Advocacy's ("DPA") failure to provide representation to indigent defendants. (DN 35, Mem., pp. 51–55). He further subdivided this claim into three arguments, only one of which is the subject of his motion for an evidentiary hearing-whether DPA adequately funded his defense. *Id.* at 54–55.[7]

Before turning to the substance of Sanborn's request, the Court will first discuss

what is not at issue here. While Sanborn devotes much of the argument in his supplemental memorandum to DPA's failure to officially assign two attorneys to represent him or to provide conflict-free investigatory services, those are not the reasons he requested an evidentiary hearing. In Sanborn's initial memorandum filed in support of his request for the hearing, he specifically discussed the issue of funding on a general level. He wanted access to DPA records to establish "disparate funding for capital defendants" as a whole. (DN 101, Mem., p. 6). He unsuccessfully sought that information through the Kentucky's Open Records Act.[8] He hoped that "[*i* ]*f* the requested documents are provided, and *if* they clearly establish or refute Sanborn's allegation of disparate funding for capital defendants, an evidentiary hearing may be unnecessary." *Id.* at 6 (emphasis added). However, he went on to argue that should the Court not order their production "or *if* they if they do not on their face resolve the issue, Sanborn is entitled to an evidentiary hearing at which DPA officials should testify." *Id.* at 6–7 (emphasis added).[9] Thus, to the extent that Sanborn interjects in the supplemental memorandum any discussion or argument relating to DPA's failure to assign co-counsel or provide conflict-free investigatory services, such is only relevant as it relates to the merits of those claims. However, it provides *no useful analysis* with respect to his need for an evidentiary

---

**7.** Sanborn also claims that DPA's failure to assign co-counsel to his case and failure to provide conflict-free investigatory services deprived him of effective assistance of counsel. (DN 35, Mem., pp. 51–54).

**8.** Sanborn's attorneys *sought access to those* records *after* he filed his habeas corpus petition in this federal court. (DN 102, Mem., p. 17). When the matter was dismissed, Sanborn's counsel failed to appeal the matter further. *Id.*

**9.** In Sanborn's petition, he states, "[t]o the best of Sanborn's knowledge and belief, the DPA funding records will indicate a wide disparity in funding from trial court to trial court, and that he, specifically, was denied adequate litigation funds in comparison to other capital defendants." (DN 35, Mem., p. 55).

hearing as to how DPA allocated funding to capital defendants in general or to his defense in particular.

The Court now turns to the particular claim that serves as the basis for Sanborn's request for an evidentiary hearing-DPA's funding of his defense. The first question the Court must ask is whether the factual basis of the claim was developed in state court. In the original memorandum he filed in support of his request for an evidentiary hearing, Sanborn states he "was never granted an evidentiary hearing on this issue in state court, through no fault of his own." (DN 101, Mem., p. 7). However, in his supplemental memorandum, he notes that the state trial court held such a hearing. (DN 109, Mem., p. 22). The Commonwealth argues that Sanborn never argued to the Kentucky Supreme Court that he needed this additional information, (DN 102, Mem., p. 17); that he has procedurally defaulted on the issue, *id.* and DN 110, Mem., p. 33; and that he did not exercise diligence in pursing the claim. (DN 110, Mem., p. 39).[10]

In Sanborn's RCr 11.42 motion, he argued that DPA undermined his defense. (St.Ct.Rec., Vol.XI, pp. 1703–06). He specifically outlined three areas of deficiency: failure to assign co-counsel, failure to provide conflict-free investigatory services, and failure to investigate alternative suspects. *Id.* at 1703–06. Nowhere in his RCr 11.42 motion did he specifically challenge funding for his defense in particular or in relation to other capital cases.[11] The

trial court thereafter granted Sanborn's request for an evidentiary hearing, and during that hearing counsel for Sanborn discussed with the court the problems he experienced in preparing the RCr 11.42 motion without sufficient funds. (Tr. of Hr'g, 6/12/96 and 8/12–13/96, pp. 73–83). There was also a colloquy between Sanborn's counsel and the trial court concerning trial defense counsel's need for certain services which were not provided. However, Sanborn points to no evidence presented at that hearing which involved the precise issue of DPA's failure to allocate adequate funding for his criminal trial.

Sanborn appealed the trial court's decision that overruled his RCr 11.42 motion. On appeal, he again argued that he was denied appropriate funding to prepare his RCr 11.42 motion. And he specifically argued that "DPA undermined [his] Defense" by not providing co-counsel and conflict-free investigatory services. (Sanborn's Br., pp. 28–30, *Sanborn v. Commonwealth of Ky.,* Case No. 96–SC–939). The Kentucky Supreme Court rejected his claim that DPA undermined his defense, finding the argument "unconvincing." *Sanborn III,* 975 S.W.2d at 911. The precise claim of DPA's failure to allocate funding for his defense, however, was not presented on appeal.

The Court finds that the factual basis of the claim was not developed in the state courts particularly for the simple reason that the argument itself was never advanced. Because it was not, the Court

10. The Commonwealth also argues that to the extent that Sanborn challenges funding for collateral attack counsel, such "does not establish a federal constitutional violation...." (DN 110, Mem., p. 33). The Court does not read the petition as asserting such an argument. It appears to the Court that Sanborn believes that he may have been denied adequate funding for the trial itself and that the DPA documents that relate to its funding for all capital defenses might confirm his suspicion.

11. While it is noted that Sanborn complains about the means by which funds are released from DPA to a client, such arguments were raised in the context of preparing the RCr 11.42 motion itself. *See* St. Ct. Rec., Vol. XI, pp. 1684–85.

must determine if Sanborn was diligent in his efforts to develop the factual basis of the claim. The Court finds that he was not. He may have challenged the means by which DPA *released* funds for his case or how it assigned attorneys to his case or failed to provide conflict-free investigators, but in no event did he challenge DPA's allocation of funding for his defense or that he was treated unequally in relation to other capital defendants. That information has been in existence almost twenty years, and the factual predicate could have been developed had he exercised due diligence. He offers the Court no reason as to why he did not raise and pursue this claim in state court. He does not suggest that his attempts to develop this claim in state court were thwarted by others. Because he was not diligent in his efforts in pursuing and developing that claim, he must meet the more stringent requirements of §§ 2254(e)(2)(A) and (B) to warrant an evidentiary hearing in federal court. Sanborn, however, offered nothing to show that he can satisfy those requirements.

Even were the Court to extend him the benefit of the doubt with respect to this argument and find that he did not fail to develop the factual basis for his claim in state court, the Court would nonetheless deny his request for a hearing. He offers the Court nothing more than "bald assertions" and "conclusory allegations" of DPA's purported failure to fund his defense, and he failed to provide the "some evidence" which is required to warrant expansion of the record on this issue.

In light of the foregoing analysis, the Court concludes that Sanborn is not entitled to an evidentiary hearing with respect to this claim. Accordingly, his request is **DENIED.**

**(C) Ineffective assistance of appellate counsel premised on the failure to raise double jeopardy argument on direct appeal after Sanborn's *first* conviction**

■ Sanborn believes that the Double Jeopardy Clause precluded his retrial after the Kentucky Supreme Court reversed his first conviction. He argues because the "prosecutorial misconduct at his first trial was so egregious, and the proceeding so fundamentally unfair, that a second trial should have been precluded by Double Jeopardy concerns." (DN 35, Mem., p. 44). His ineffective assistance of counsel claim, however, is premised on appellate counsel's failure to raise the double jeopardy challenge to a new trial on direct appeal after he was convicted at the *first* trial. (DN 35, Mem., pp. 58–60).

Following the Kentucky Supreme Court's decision to reverse Sanborn's conviction and death sentence, he claims that counsel originally contemplated filing a motion for rehearing in order to assert the double jeopardy argument. (DN 35, Mem., pp. 58–59; DN 58, Mem., pp. 52–53; DN 109, Mem., pp. 33–34). Counsel abandoned that idea and instead chose to file a motion to dismiss with the trial court. When the trial court denied the motion, counsel filed a petition with the Kentucky Court of Appeals seeking a writ of prohibition on double jeopardy grounds. *Id.* In denying the petition, the court of appeals specifically addressed Sanborn's argument that prosecutorial misconduct prevented a retrial and noted "[t]he issues raised by the petitioner in the petition for writ of prohibition were addressed by the Supreme Court of Kentucky in their opinion in *Sanborn v. Commonwealth*, Ky., 754 S.W.2d 534 (1988)." (DN 58, Mem., Ex. 2). The court of appeals further noted that the Kentucky Supreme Court did not bar a retrial but directed an appropriate instruction to the jury to address the missing

evidence. *Id.; see also Sanborn I*, 754 S.W.2d at 540 (holding that the witnesses whose taped statements were erased were "not essential to the Commonwealth's case" and that a "missing evidence instruction was sufficient to offset the prosecutor's misconduct.").[12] The Kentucky Supreme Court affirmed the court of appeals' decision to deny the petition and "adopt[ed] that opinion as [its] own." [13]

The first question the Court must ask is whether the factual basis of Sanborn's claim was developed in state court. Sanborn admits that the issue was never raised in state court, (DN 58, Mem., p. 54; DN 101, Mem., pp. 7–8), but argues that he did not fail to develop the particular claim because "Kentucky does not permit a prisoner to raise the claim of ineffective assistance of appellate counsel in post-conviction proceedings." (DN 109, Mem., p. 30). The Commonwealth argues that the claim is procedurally defaulted. (DN 102, Mem., p. 17; DN 110, Mem., pp. 41–43). However, an ineffective assistance of appellate counsel claim is not a cognizable issue in Kentucky's courts whether raised on direct review or collateral attack. *Lewis v. Commonwealth*, 42 S.W.3d 605, 614 (Ky.2001) (rejecting claim on direct appeal); *see also Bowling v. Commonwealth*, 80 S.W.3d 405, 421 (Ky.2002) (holding that "[a]n RCr 11.42 motion cannot be used as a vehicle for relief from ineffective assistance of appellate counsel"). In the end, Sanborn cannot be penalized for failing to develop the factual basis of claim that he is prohibited from bringing in the courts of Kentucky in the first instance. Thus, the stringent requirements of § 2254(e)(2) do not apply to Sanborn's request for a hearing.

Though § 2254(e)(2) does not preclude Sanborn's request for a hearing, he must nevertheless establish entitlement to one. Under Sixth Circuit law, he must allege sufficient grounds for release, that relevant facts are in dispute, and that the state courts did not hold a full and fair evidentiary with respect to this claim. Moreover, he must provide the Court something more than conclusory allegations of his need for hearing and can do so only by providing some evidence to support his request for an expansion of the record on this issue. Because Sanborn failed to meet this standard, he is not entitled to an evidentiary hearing on this claim.

First, Sanborn failed to show that performance of appellate counsel was constitutionally deficient and that he was preju-

---

**12.** The Kentucky Supreme Court went on to catalog a long list of the prosecutor's actions that it deemed misconduct. But in the end, the Kentucky Supreme Court "reversed and remanded for a new trial in conformity with [its] opinion." *Id.* at 550.

**13.** Were there any questions as to whether the Double Jeopardy Clause barred Sanborn's retrial (a suggestion that this Court does not adopt), such was clearly laid to rest by a subsequent discussion by the Kentucky Supreme Court. In a later case, the court flatly rejected the notion that reversal based on prosecutorial misconduct automatically bars a retrial on double jeopardy grounds. *Couch v. Maricle*, 998 S.W.2d 469, 472 (Ky.1999). It stated, "It would be a high price indeed for society to pay were every accused granted immunity from punishment because of any defect sufficient to constitute reversible error in the proceedings leading to conviction." *Id.* at 471–72 (citations omitted). Looking to the first Sanborn trial itself, the Kentucky Supreme Court went on to say:

> While Sanborn's conviction was reversed, his retrial was not barred by double jeopardy. He was reconvicted upon retrial and again sentenced to death. *Sanborn v. Commonwealth*, Ky., 892 S.W.2d 542 (1994), *cert. denied*, 516 U.S. 854, 116 S.Ct. 154, 133 L.Ed.2d 98 (1995). If Couch were correct in her argument, the prosecutor's misconduct in Sanborn's first trial should have immunized him from further prosecution, which would have been a very high price for society to pay.

*Id.*

diced thereby. The Kentucky Supreme Court clearly spoke to the issue of double jeopardy when it reversed Sanborn's conviction and sentence on direct appeal following the first trial. Thus, the mere fact that counsel did not expressly raise the issue on appeal did not prejudice Sanborn as the issue was squarely addressed by the Commonwealth's highest court. Second, Sanborn failed to show that relevant facts are in dispute with respect to this claim. He claims that a hearing is warranted because "[t]he reasoning behind appellate counsel's actions and omissions cannot be determined without [one], during which appellate counsel and other individuals from the Department of Public Advocacy can be questioned regarding their decisions and actions." (DN 109, Mem., pp. 34–35). This reason, however, does not highlight disputed relevant facts that must and can only be resolved through an evidentiary hearing. Finally, Sanborn failed to offer the Court any evidence to support his theory for relief. The mere fact that the state court did not hold a hearing with respect to this issue does not automatically entitle him to one in federal court. As the Sixth Circuit recently opined:

> At oral argument, . . . counsel argued that Bowling could not make more than bald assertions precisely because he had not had an evidentiary hearing. This circular logic, however, would entitle every habeas defendant to an evidentiary hearing on any issue. Without some evidence in support of Bowling's implausible theory of the case,. . ., we cannot say that the district court's decision to deny an evidentiary hearing was an abuse of discretion.

Bowling v. Parker, 344 F.3d at 512 (6th Cir.2003). Sanborn offered the Court no evidence to establish that expansion of the record on this issue is warranted. In light of the foregoing analysis, the Court concludes that Sanborn is not entitled to an evidentiary hearing with respect to this claim, and thus his request is **DENIED**.

**(D) Ineffective assistance of counsel claim premised on counsel's failure to request a continuance to allow proper preparation for the testimony of prosecution witness Rodney Tingle**

█ Rodney Tingle was a surprise prosecution witness, whose identity was disclosed to defense counsel during trial. Sanborn argues that counsel was ineffective for "failing to move for a continuance to investigate the background of the surprise witness." (DN 35, Mem., p. 60). In fact, Sanborn charges counsel with ineffectiveness *"for failing to be aware that surprise testimony was coming forward, based upon prior disclosures from the Commonwealth."* *Id.* at 61 (original emphasis). Sanborn argues that "had counsel requested a continuance, counsel would have been able to effectively impeach the Commonwealth's jailhouse snitch, Rodney Tingle. Due to trial counsel's failure to request a continuance, trial counsel did not develop such impeachment evidence." (DN 109, Mem., p. 37). Sanborn originally claimed that "an evidentiary hearing . . . should be granted to allow the Petitioner to ascertain defense counsel's motives for failing to request a continuance, and to determine with more certainty the circumstances under which Tingle reportedly overheard Sanborn make incriminating statements to a third jail inmate." (DN 101, Mem., p. 8). In a supplemental memorandum, he states that the "material facts in dispute are what counsel's reasons were for not requesting a continuance to investigate Tingle's background, and what impeachment evidence would have been developed had a reasonable investigation taken place." (DN 109, Mem., p. 37).

The first question the Court must ask is whether the factual basis of the claim was developed in state court. Sanborn claims

that he raised this issue in his state court motion for postconviction relief, that he requested an evidentiary hearing with respect to this claim, and that he presented testimony at the hearing. He argues, however, that he is entitled to an evidentiary hearing here because the state court did not afford him a full and fair hearing with respect to this claim, that relevant facts are dispute, and that he has alleged sufficient grounds for release.

The Commonwealth argues that an evidentiary hearing is not required for three principal reasons. First, it claims that Sanborn was granted a preadmissibility hearing where he was given the opportunity to question Tingle about his background and more specifically his criminal history. (DN 110, Mem., pp. 44–45). Second, the Commonwealth notes that during Tingle's testimony at trial, Sanborn's counsel again questioned Tingle about his ties to the victim's family.[14] *Id.* at 45. Finally, the Commonwealth states that the trial court held an evidentiary hearing in connection with Sanborn's ineffective assistance claim but that Sanborn presented no evidence that his "attorneys performance was deficient as to Tingle's cross-examination nor to establish what additional facts might have been developed by counsel so as to satisfy the prejudice requirement of *Strickland v. Washington* ...." (DN 110, Mem., pp. 46–47).

The trial court rejected Sanborn's ineffective assistance of counsel claims, noting

"[n]one of the allegations presented by the defendant were substantiated by testimony at the hearing and are refuted by the record." (St.Ct.Rec., Vol. XIV, p. 2065). The Kentucky Supreme Court likewise rejected this specific argument, claiming that it had been addressed on Sanborn's direct appeal of his conviction and sentence. *Sanborn III*, 975 S.W.2d at 912–13.

Sanborn failed to develop the factual basis of this claim. While the state trial court held an evidentiary hearing with respect to Sanborn's claim of ineffective assistance of counsel, Sanborn failed to identify how he developed the factual basis of this particular claim at the RCr 11.42 hearing. It may be true that requesting an evidentiary hearing is necessary to establish a petitioner's diligence under (*Michael*) *Williams*; however, the mere request is certainly not sufficient to show diligence when a petitioner, who has been granted an evidentiary hearing, completely fails to develop the factual basis of that claim during the course of that proceeding.

In this case, Sanborn was granted an evidentiary hearing on his ineffective assistance of counsel claims but failed to show that he pursued, let alone diligently pursued, the factual basis of this particular claim in the state courts. Thus, the Court finds that the factual predicate of his argument could have been developed had he exercised due diligence. Because he was not diligent in his efforts in pursuing or developing that claim, he must meet the

---

14. During the preadmissibility hearing held outside the presence of the jury, Sanborn through counsel questioned Tingle extensively about his background (Tr. 4/1–2/91, pp. 216–20). Tingle testified that he had never been convicted of a felony. He listed convictions for DUI, public intoxication, possession of marijuana, and driving on a suspended license. He also testified that he was engaged to the victim's niece. Following the hearing, the trial court permitted the Commonwealth to offer Tingle's testimony. On direct examination, Tingle testified that on December 26, 1983, he was in Oldham County Jail following arrests for public intoxication and possession of marijuana. Tr. at 222–23. Tingle described an altercation that occurred between Sanborn and another inmate where Sanborn purportedly "pushed the other guy against the wall and told him, 'I had killed but once but they can't kill me but once.'" Tr. at 223. Sanborn's counsel asked only a few questions concerning the relationship between Tingle's fiancée and the victim. Tr. at 224.

more stringent requirements of §§ 2254(e)(2)(A) and (B) to warrant an evidentiary hearing in federal court. Sanborn, however, offered nothing to show that he can satisfy those requirements. Therefore, he is precluded from developing the factual basis of this claim at this stage of the proceedings. Accordingly, his motion is **DENIED.**

**(E) Ineffective assistance of counsel claim with regard to use of Dr. Philip Johnson as an expert witness for the defense**

■ Sanborn claims that counsel was ineffective for "failing to realize that the testimony of [an] expert witness . . . would not be admissible at the guilt phase of the trial." (DN 35, Mem., p. 10). Sanborn originally claimed that he is entitled to an evidentiary hearing concerning "Dr. Johnson's potential bias in that he had a professional conflict of interest by having been employed by the Commonwealth of Kentucky and having evaluated Sanborn previously; and . . . how that bias may have affected his evaluation of Sanborn for the second trial in that he did not fully understand his role as a defense expert." (DN 101, Mem., p. 8). Sanborn also claimed such a hearing was necessary "to determine what, if anything, counsel did to properly prepare, argue, and understand that law in making these arguments to the court." *Id.* at 9. In a supplemental memorandum, Sanborn states that an evidentiary hearing is warranted to resolve the following material facts:

> whether there are defensible reasons for the utilization of Dr. Johnson as the sole defense mental health expert; what defense counsel and Dr. Johnson thought the psychologist's role as a defense expert actually was; whether defense counsel considered other expert witnesses; whether cost was a principal reason for the utilization of Dr. Johnson at Sanborn's second trial, or whether

financial restraints hampered Petitioner's presentation of an EED defense; defense counsel's understanding of an EED defense and the extent of his actual preparation for that defense in Sanborn's case; other potential sources of information that could have provided a foundation for Dr. Johnson's testimony; and whether Sanborn agreed with an admission of his guilt as part of the EED defense.

(DN 109, Mem., pp. 44–45).

The first question the Court must ask is whether the factual basis of Sanborn's claim was developed in state court. Sanborn concedes that he was granted an evidentiary hearing with respect to this particular claim where he was given ample opportunity to question various attorneys from DPA about the decision to use Dr. Johnson as a defense expert. He notes, however, that there are disputed issues of fact and that the trial court did not hold a full and fair hearing with respect to this issue. The Commonwealth counters that an evidentiary hearing is not warranted in this matter, arguing that Sanborn's "chief trial counsel . . . was questioned about the selection of Dr. Johnson" (DN 110, Mem., p. 49), that "with the exercise of due diligence, Sanborn and his state collateral attack attorneys could have developed whatever evidence they wished regarding this claim at that evidentiary hearing," (DN 102, Mem., p. 22), and that "his current set of attorneys now wish to present additional evidence from the same witnesses on this claim does not satisfy the requirements a § 2254(e)(2) to justify a new evidentiary hearing in federal habeas court." (DN 110, Mem., p. 57).

The state trial court denied the RCr 11.42 motion with respect to this claim, holding

> Mr. Tustaniwsky's decision to rely on extreme emotional disturbance was a

tactical decision evidently based on the sheer volume of evidence of the defendant's guilt and Tustaniwsky's belief that Dr. Johnson's testimony would be admissible in the guilt phase of the trial.

The assistance that Mr. Tustaniwsky provided to Sanborn was not constitutionally ineffective. The fact that other attorneys would have chosen another line of defense or prepared for the trial differently or had different views as to the approach of various witnesses in their testimony is not and should not be the consideration of this Court.

(St.Ct.Rec., Vol. XIV, pp. 2066–67). The Kentucky Supreme Court likewise rejected Sanborn's argument, noting that "counsel certainly was not ineffective for using one of the most experienced forensic psychologists as a defense witness at trial." *Sanborn III*, 975 S.W.2d at 912. And to the extent that Sanborn objected to the fact that "Dr. Johnson testified that there was nothing to support Sanborn's claim that the victim said something to him to trigger his anger other than what Sanborn himself had said," his objection lacked merit because "[t]he constitutional right to effective assistance of counsel does not require counsel to present false testimony or make false statements to the court regarding testimony." *Id.* (citation omitted).

The factual basis of Sanborn's claim was developed in state court. The state trial court heard extensive testimony on this issue at the RCr 11.42 hearing, and in no way did it prevent Sanborn from exploring this issue further. While Sanborn believes additional information must be developed

before this Court rules on the particular claim, he offers nothing in the form of evidence which would support a need to expand the record on this claim. Again, he has premised the request for a hearing on the desire to ask additional questions that previous counsel may have failed to ask at the postconviction hearing. In other words, he merely seeks a second bite at the apple. Such, however, is simply an insufficient basis to warrant an evidentiary hearing. Because the factual basis of the claim has been sufficiently developed for this Court to determine whether counsel was constitutionally ineffective, the request for an evidentiary hearing with respect to this claim is **DENIED**.

**(F) Ineffective assistance of counsel claim with regard to Dr. Skelton's testimony**

■ Sanborn argues that counsel was ineffective because counsel did not properly prepare him for his examination by Dr. Skelton and "fail[ed] to move prior to trial for a motion *in limine* to prevent any testimony that might be prejudicial at trial." (DN 35, Mem., pp. 27–31).[15] In Sanborn's Traverse, he also claims that "[h]ad trial counsel Tustaniwsky rendered effective assistance of counsel, he would have accompanied Petitioner Sanborn at the evaluation with Dr. Skelton, and would have prevented Dr. Skelton's intrusions upon the attorney-client privilege." (DN 58, Mem., p. 30).

Sanborn originally sought an evidentiary hearing with respect to only one of the foregoing arguments: to determine the

---

15.  Sanborn summarized the prejudicial effect of her testimony in his original motion for an evidentiary hearing:

> Dr. Skelton's testimony is replete with violations of what would have been attorney/client privilege. Her testimony addresses defense counsel's preparation (and implied coaching) of Petitioner for purposes of presenting an EED defense and, in a

nutshell, was overwhelmingly damaging to the Petitioner. Petitioner realizes that Dr. Skelton's testimony may have been damaging no matter what, but defense counsel certainly could have been in a better position to prevent many of the violations in the first place by being present during her examination of the Petitioner.

(DN 101, Mem., p. 10).

"full impact of having Dr. Skelton examine Petitioner *without* defense counsel being present cannot be determined without" such a hearing. (DN 101, Mem., pp. 9–10) (original emphasis). And though he later claimed that relevant facts are in dispute with respect to this claim (DN 109, Mem., p. 48), he failed to identify those particular factual disputes to the Court. Rather, he merely offered additional argument in support of the underlying claim itself.

The first question the Court must ask is whether the factual basis of Sanborn's claim concerning Skelton was developed in state court. Because his request for an evidentiary hearing relates only to one aspect of the claim-counsel's failure to attend Sanborn's sessions with Dr. Skelton-the Court will undertake this analysis with respect to that claim only. Sanborn states he raised this issue in his RCr 11.42 motion in the state trial court where he was granted an evidentiary hearing, but he argues that he was not given a full and fair hearing. The Commonwealth states that Sanborn was given the opportunity to present evidence at that hearing and argues that Sanborn's "failure to present additional evidence (assuming such might exist) was the fault of Sanborn's collateral attack counsel. . . ." (DN 110, Mem., p. 59). And in the end, the Commonwealth notes that "Sanborn simply complains and suggests methods whereby counsel **might** have been able to do a better job with unlimited time and resources to prepare for trial." *Id.* at 61 (original emphasis).

In Sanborn's RCr 11.42 motion, he argued that counsel was ineffective because he "failed to fully prepare for Dr. Skelton's testimony." (St.Ct.Rec., Vol. XI, p. 1715). Specifically, Sanborn argued that counsel "failed to interview Victoria Skelton prior to trial and otherwise prepare for cross-examination" and "fail[ed] to sufficiently discuss and determine the defense ... prior to [Sanborn's] evaluation by ... Dr.

Victoria Skelton." *Id.* However, at no time did Sanborn argue before the state trial court that counsel was ineffective for failing to attend Sanborn's meetings with Dr. Skelton. Following the evidentiary hearing, the state trial court rejected Sanborn's argument (St.Ct.Rec., Vol. XIV, p. 2065). And on appeal, the Kentucky Supreme Court disagreed with Sanborn's claim that counsel failed to fully prepare for Sanborn's session with Dr. Skelton. *Sanborn III,* 975 S.W.2d at 913.

The Court finds that the factual basis of this claim was not developed in state court for the simple reason that this argument about not meeting with Dr. Skelton was never presented to the state court. Moreover, Sanborn was not diligent in his efforts to pursue the factual basis of this claim. Sanborn identifies only a few pages of the 456–page state evidentiary hearing transcript which were devoted to the issue of trial counsel's performance with regard to Dr. Skelton's testimony. (Tr. of Hr'g, 6/12/96 and 8/12–13/96, pp. 355–57). While Sanborn's trial counsel was available for further questioning, Sanborn did not pose any questions with respect to this particular claim. This issue was available to Sanborn at the time he initiated state court collateral attack proceedings; answers to questions related thereto could have been ascertained. He offers the Court no reason as to why he did not pursue this issue in state court. And he makes no claim that attempts to do so were thwarted by the actions of others. Thus, the Court finds that the factual predicate of his argument could have been developed had he exercised due diligence. Because Sanborn was not diligent in his efforts in pursuing or developing that claim, he must meet the more stringent requirements of §§ 2254(e)(2)(A) and (B) to warrant an evidentiary hearing in federal court. Sanborn, however, offered nothing to show that he can satisfy those requirements.

Therefore, he is precluded from developing the factual basis of this claim at this stage of the proceedings. Accordingly, his motion is **DENIED**.

**(G) Ineffective assistance of counsel claim premised on the failure to secure Dr. Reginald Van Stockum's appearance in person to testify at the second trial**

■ Sanborn claims that counsel was ineffective for failing to insure that Dr. Reginald Van Stockum would be available to testify at the mitigation phase of his trial. (DN 35, Mem., p. 24).[16] Because the witness was not available to testify at the retrial, Dr. Van Stockum's testimony from Sanborn's first criminal trial was read into the record. *Id.* Sanborn complains, however, that not all of his testimony was presented to the jury. (DN 58, Mem., p. 28). Sanborn states that Dr. Van Stockum's "testimony was critical, as it would have provided the jury with affirmative evidence that the rape of Barbara Heilman occurred post-mortem, and would have conclusively rebutted the testimony of Reverend Barclay Brown." (DN 109, Mem., p. 53).

Sanborn claims that he is entitled to an evidentiary hearing in order "to determine the true nature of Dr. Van Stockum's testimony had he been called as a witness, and the extent to which it would have varied from this testimony at the first trial." (DN 101, Mem., p. 11). And though he elsewhere claims that relevant facts are in dispute with respect to this claim (DN 109, Mem., p. 53), he failed to identify those factual disputes to the Court.

The first question the Court must ask is whether the factual basis of the claim was developed in state court. Sanborn claims he raised this issue in his RCr 11.42 motion and was granted an evidentiary hearing relating thereto, but he argues that he did not receive a full and fair hearing and that relevant facts are in dispute. The Commonwealth argues that trial counsel testified at the evidentiary hearing but maintains that Sanborn was not diligent in his pursuit of this claim. The Commonwealth further notes that Sanborn "failed to demonstrate that Dr. Van Stockum's in person testimony would have produced any additional material evidence for the jury to have considered. Sanborn still fails to allege what additional facts Dr. Van Stockum's live testimony would have been [had he] been produced and how such additional facts would have made any difference in his case." (DN 110, Mem., p. 64).

During the RCr 11.42 evidentiary hearing, Sanborn's trial counsel testified about his attempts to contact Dr. Van Stockum and secure the witness's attendance at trial. (Tr. of Hr'g, 6/12/96 and 8/12–13/96, pp. 361–62). Counsel was also questioned about his unsuccessful attempts to secure another expert witness to testify about the physical evidence. Tr. at 362–65. The state trial court ultimately rejected Sanborn's claim that counsel's performance was ineffective with respect to this witness. (St.Ct.Rec., Vol. XIV, pp. 2063–68). And the Kentucky Supreme Court likewise rejected the argument, noting that "Dr. Van Stockum's testimony from the first trial was read back to the jury during the retrial." *Sanborn III,* 975 S.W.2d at 913.

The Court finds that the factual basis of this claim has been adequately developed to determine whether counsel was constitutionally effective. The state trial court heard testimony with regard to what steps counsel took to secure the witness's presence. While Sanborn believes that Dr. Van Stockum *might have* testified differently at retrial, he offers nothing more

---

**16.** Sanborn set forth this particular claim within his general argument that the cumulative errors of counsel deprived him of effective assistance of counsel. (DN 35, Mem., pp. 23–26).

than mere speculation to support his need for an evidentiary hearing on this point. He identifies no disputed facts that are related to this issue or evidence not previously considered. Accordingly, Sanborn's request for an evidentiary hearing on this claim is **DENIED.**

## III.  SUMMARY

Reviewing the multiple areas in which Sanborn seeks an evidentiary hearing has entailed a fair amount of research and analysis by the Court, and that research and analysis suggest a broader question: just when *can* a federal habeas petitioner qualify for an evidentiary hearing? Except in the case where the AEDPA explicitly authorizes a hearing because of a new, retroactive constitutional rule—hardly a frequent occurrence in habeas corpus cases—the answer has to be that evidentiary hearings under current law are infrequent. It is worth contrasting the current result with older Supreme Court cases, which emphasized the "plenary" power of federal courts to order such hearings. *Townsend v. Sain,* 372 U.S. 293, 312, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).

Under current law, if a petitioner previously had an adequate hearing, typically in the state postconviction process, no subsequent federal hearing is required. *See* Section I, *supra.* In other words, a petitioner probably does not get a second, successive hearing if he previously had one. If a petitioner did not previously have a hearing, then he has to show a very good reason why he did not take advantage of the state postconviction process, or the AEDPA will require the conclusion that he has "failed" to develop the factual basis of his claim. Such a failure will bar him from a federal hearing. So, if a petitioner has already had a hearing, he probably cannot have another; and if a petitioner has not already had a hearing, he has to demonstrate that he was not at fault for the lack of factual development.

Congress most certainly has the right to control federal court jurisdiction and the scope of review of habeas corpus petitions, and it has done so through passage of the AEDPA. The point of this observation is neither to applaud nor to criticize the policy evinced by the AEDPA, but to note that the "plenary" power to hold hearings has been significantly changed by legislation and Supreme Court precedent so that federal habeas evidentiary hearings are much more infrequent. The door to the evidentiary hearing is no longer open wide; it is not closed, but it is not easily passed through by the contemporary habeas petitioner. Under present law, it is incumbent upon a petitioner to develop thoroughly the factual record in the state postconviction process.

The Court has reviewed Sanborn's requests for a hearing in detail. In some instances, the factual basis of the particular claim was already adequately developed for this Court to undertake a substantive review. In others, the factual basis was not developed because Sanborn either failed to exercise the requisite diligence to develop the claim or was prohibited from doing so by state law. But in the end, the Court concludes that none of the claims for which Sanborn seeks an evidentiary hearing requires an expansion of the record. The merits of his claims must be carefully considered, but no evidentiary hearing is required under current precedent and the AEDPA. Accordingly, to the extent that Sanborn seeks such a hearing in this case, his motion is **DENIED.**