*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0267P (6th Cir.)
File Name: 02a0267p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

No. 99-2090
THOMAS W. SAWYER,
    *Petitioner-Appellant,*

    *v.*

GERALD HOFBAUER,
    *Respondent-Appellee.*

No. 01-1167
THOMAS W. SAWYER,
    *Petitioner-Appellant,*

    *v.*

CLARICE STOVALL,
    *Respondent-Appellee.*

Nos. 99-2090;
01-1167

Appeal from the United States District Courts
for the Western District of Michigan at
Kalamazoo and Grand Rapids.
Nos. 97-00113; 98-00166—Wendell A. Miles and
Richard A. Enslen, District Judges.

Argued: January 25, 2002

Decided and Filed: August 9, 2002

1

Before:  MERRITT, BOGGS, and MOORE, Circuit Judges.

_____

**COUNSEL**

**ARGUED:**  Timothy M. Holloway, Taylor, Michigan, for Appellant.  Brad H. Beaver, OFFICE OF THE ATTORNEY GENERAL, HABEAS CORPUS DIVISION, Lansing, Michigan, for Appellees.  **ON BRIEF:**  Timothy M. Holloway, Taylor, Michigan, for Appellant.  Brad H. Beaver, OFFICE OF THE ATTORNEY GENERAL, HABEAS CORPUS DIVISION, Lansing, Michigan, for Appellees.

MOORE, J., delivered the opinion of the court, in which MERRITT, J., joined.  BOGGS, J. (pp. 13-17), delivered a separate opinion concurring in part and dissenting in part.

_____

**OPINION**

_____

KAREN NELSON MOORE, Circuit Judge.  Petitioner-Appellant Thomas W. Sawyer ("Sawyer"), a Michigan prisoner, was convicted in two separate trials of first- and second-degree criminal sexual conduct, kidnaping, and possession of a firearm during the commission of a felony. The district courts denied his petitions for a writ of habeas corpus and his requests for an evidentiary hearing.  We now **AFFIRM** in part, **REVERSE** in part, and **REMAND** for further proceedings consistent with this opinion.

## I. BACKGROUND

On March 12, 1991, fourteen-year-old Lucas James Lundberg was kidnaped at gunpoint near his home in Ingham County, Michigan, and forced to engage in oral sex by a stranger who subsequently released him.  On May 10, 1991, eighteen-year-old Sandra Miller ("Miller") was kidnaped at

gunpoint near her home in Hillsdale County, Michigan, and forced to engage in oral sex by a stranger who subsequently released her. During the second incident, the stranger made Miller take off her clothes and underwear, which he returned before releasing her. Police investigation resulted in Sawyer's arrest for both assaults.

On June 15, 1992, after a Hillsdale County jury had convicted Sawyer of first- and second-degree criminal sexual conduct, kidnaping, and three counts of possession of a firearm during the commission of a felony, Sawyer was sentenced to two concurrent terms of twenty-to-thirty years' imprisonment for the first-degree criminal sexual conduct and kidnaping charges, a concurrent term of ten-to-fifteen years for the second-degree criminal sexual conduct charge, and a consecutive term of two years for the felony-firearm charges. The Michigan Court of Appeals affirmed Sawyer's conviction and sentence on January 16, 1996, and the Michigan Supreme Court denied leave to appeal.

On November 18, 1992, after an Ingham County jury had convicted Sawyer of kidnaping, first-degree criminal sexual conduct, and possession of a firearm during the commission of a felony, Sawyer was sentenced to concurrent terms of life imprisonment for the kidnaping charge and twenty-five-to-fifty years' imprisonment for the first-degree criminal sexual conduct charge, plus a consecutive term of two years for the felony-firearm charge. The Michigan Court of Appeals affirmed Sawyer's conviction and sentence on February 25, 1997, and the Michigan Supreme Court denied leave to appeal.

On August 28, 1997, Sawyer filed, pro se, a petition for a writ of habeas corpus for his conviction and sentence in the Hillsdale County case, raising six claims. The matter was referred to a magistrate judge, who recommended that the district court dismiss Sawyer's petition. On July 9, 1999, the district court adopted the magistrate judge's report and recommendation and summarily dismissed the case. On July 23, 1999, Sawyer filed a Rule 59 motion to alter or amend the

judgment, which was denied on August 25, 1999. On September 21, 1999, Sawyer filed a notice of appeal. Sawyer then applied for a certificate of appealability ("COA"), which the district court granted with respect to the one issue of whether "[t]he lack of a 'full and fair adjudication,' in relation to factual issues concerning the semen stain, in the state court precludes application of the standards of deference arising under the Antiterrorism and Effective Death Penalty Act." Joint Appendix I ("J.A. I") at 41. On April 12, 2000, we construed Sawyer's notice of appeal as an application for a COA, which we denied with respect to all of the issues that the district court had not certified. On August 4, 2000, we denied Sawyer's petition for rehearing of the April 12 order.

On February 20, 1998, Sawyer filed, pro se, a petition for a writ of habeas corpus for his conviction and sentence in the Ingham County case, raising nine claims. The matter was referred to a magistrate judge, who recommended that the district court deny Sawyer's petition. On January 8, 2001, the district court adopted the magistrate judge's report and recommendation and dismissed the case, granting a COA only with respect to Sawyer's claim under *Brady v. Maryland*, 373 U.S. 83 (1963). On January 25, 2001, Sawyer filed a timely notice of appeal.

## II. ANALYSIS

In a habeas corpus proceeding, we review a district court's legal conclusions de novo and factual findings for clear error. *Lott v. Coyle*, 261 F.3d 594, 606 (6th Cir. 2001), *cert. denied*, 122 S. Ct. 1106 (2002). Because Sawyer filed his habeas petitions after the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") became effective, these cases are governed by AEDPA. Under those provisions, we may not grant a writ of habeas corpus for any claim that was adjudicated on the merits in state court unless the adjudication:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly

evidence that is inadmissible under Michigan's rape shield law.

It was upon this factual basis that the Michigan Court of Appeals noted that the semen was unlikely to have come from Miller's attacker and that Sawyer's newly-hatched theory to the contrary was "highly speculative." It is also based on this factual record that the court rejected Sawyer's *Brady* claim, implicitly holding that the withheld evidence (which served to confirm the belief, held by both sides throughout the pendency of this case, that the semen did not come from Sawyer) was not material under *Brady*. Because I believe that the state court's adjudication was not contrary to, nor an unreasonable application of, federal law, and because it was not based on an unreasonable determination of fact, I believe that AEDPA constrains this court's ability to grant the writ requested by Sawyer. I therefore respectfully dissent from the majority's reversal of the district court's denial of Sawyer's petition.

Indeed, the government specifically indicated to the judge that it believed the semen to be that of an unnamed boyfriend.

2) Both the government and Sawyer's counsel believed that it would have been impossible for the attacker's semen to have gotten on Miller's underwear. Indeed, Sawyer's counsel elicited testimony from Miller on two separate occasions to the effect that she herself had taken her underwear off, placed it on the other side of the car from where the attacker sat throughout the attack, and retrieved it from where she had placed it when permitted to put her clothes back on. J.A. I at 295, 297-98.

3) The defense made no attempt to secure a stipulation to the jury to these effects (indeed, the jury was never told that there was semen on the underwear). Further, it is doubtful that such a stipulation would have been admissible under Michigan's rape shield law.

4) The defense made no attempt to secure, and almost certainly could not have compelled, a DNA sample from the putative boyfriend, even if the victim could have been coerced into naming a person. This is because of the rape shield law, and the likely unavailability of compulsory process against a potentially involved member of the community.

Further, Sawyer's theory on habeas review is that if the stain is tested, it might prove not to have come from Miller's putative boyfriend. This, in turn, would imply that the semen had been deposited by yet another third party – either consensually or as a result of coercion. However, the prosecution's knowledge, even if expanded to include the result of the test undertaken by the state lab unbeknownst to the prosecutor, was merely that the semen did not come from the defendant and that it was believed to have come from an unnamed boyfriend. The only use of such evidence would have been to show that the victim had had sexual contact with a male who was not the defendant; this is exactly the type of

established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). In addition, the findings of fact made by a state court are presumed to be correct and can be contravened only if the habeas petitioner can show by clear and convincing evidence that the state court's factual findings were erroneous. 28 U.S.C. § 2254(e)(1).

AEDPA provides the following standard for determining whether a petitioner is entitled to an evidentiary hearing:

(e)(2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that —

(A) the claim relies on —

(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).

## A. *Sawyer v. Hofbauer*

Sawyer's claims to habeas relief rest chiefly on the existence of a semen stain found on Miller's underwear that contained saliva. Sawyer maintains that this evidence is relevant because Miller "performed fellatio on the perpetrator after which he handled her panties while the victim was blindfolded." J.A. I at 130-31. The State of Michigan contends that the particular facts of the case render this evidence irrelevant, inasmuch as Miller "testified that she was forced to swallow Sawyer's discharge and that her underwear w[as] lying on the other side of the car from where the assault occurred." Respondent's Br. I at 28-29.

At trial, Kyle Ann Hoskins, a laboratory scientist for the Michigan State Police, stated during nontestimonial colloquy that she had discovered traces of semen on Miller's underwear, but that Detective Sergeant Clifton L. Edwards ("Edwards"), the lead investigator in the case, had instructed her that additional analysis of the stain would not be necessary. According to the prosecutor, Edwards indicated that the semen had been deposited by a boyfriend. The fact that the police had in fact tested the semen stain against Sawyer's blood type and obtained a negative result was discovered only after defense counsel made a Freedom of Information Act ("FOIA") request in 1994, two years after the trial. Sawyer then raised the *Brady* claim in his direct appeal, which the state courts rejected.

### 1. Evidentiary Hearing

Sawyer argues that the district court should have held an evidentiary hearing on the negative result of the semen stain because the state courts failed to accord him a full and fair hearing on the issue. We have previously recognized the discretion and "inherent authority that a district court always has in habeas cases to order evidentiary hearings to settle disputed issues of material fact." *Abdur'rahman v. Bell*, 226 F.3d 696, 706 (2000), *cert. denied*, 122 S. Ct. 386 (2001). In enacting AEDPA, Congress placed restrictions on this discretion to hold an evidentiary hearing. A petitioner who

While it is possible that some or all of the judges on this panel might have held that the withheld evidence was material if we were in the state judges' shoes, we are not writing on a clean slate in deciding this issue. Because the state court's necessary holding that the withheld evidence was not material is not contrary to, nor an unreasonable application of, *Brady*, and because it is not based on an unreasonable determination of the facts, this court is constrained by AEDPA to not grant the writ. 28 U.S.C. § 2254(d)(1)-(2).

First, for withheld evidence to be material for *Brady* purposes, it must either be admissible or lead directly to admissible evidence. *See United States v. Phillip*, 948 F.2d 241, 249 (6th Cir. 1991) ("information withheld by the prosecution is not material unless the information consists of, or would lead directly to, evidence admissible at trial"). However, the state trial court held, both during trial and in post-conviction proceedings, that any evidence of the semen stain in Miller's underwear was inadmissible pursuant to Michigan's rape shield law. *See* Trial Court Tr. at 614-15; J.A. I at 568. If the fact of the stain was inadmissible, then clearly any evidence that would have revolved around the stain (including that it did not come from Sawyer) was also inadmissible. The majority discounts this fact by stating that the trial court was not aware, at the time of its holding, that the stain had been tested and determined not to be from Sawyer. *See* Maj. Op. at 9 n.2. However, this fact is irrelevant; the trial court refused to permit further testing of the underwear on the basis that, *regardless of the results of such a test*, any introduction of the fact of the semen stain would violate Michigan's rape shield law. J.A. I at 564-65, 568.

Even if the withheld evidence were admissible, there is good reason to doubt its materiality. The withheld evidence would only be material if it would somehow assist in showing that Sawyer was not Miller's attacker. However:

1)   The prosecution never contended, either to the jury or to the judge, that the semen came from Sawyer.

that the underwear had actually been tested after filing his direct appeal, whereupon he filed a supplemental brief again requesting further testing of the underwear.[1] J.A. I at 130-32. Therefore, the court of appeals responded, understandably, to Sawyer's request – made before he had evidence that the underwear was tested and renewed once he had that evidence – that the trial court permit further testing of the underwear.

More importantly, the opening sentence of the state court of appeals's treatment of this issue is not fatal to its reasonableness under clearly established federal law as set forth by the Supreme Court, because the remainder of the court's discussion suggests that the court did reasonably apply *Brady*. The court noted that "[t]he facts of the crime in this case were unlikely to have resulted in a semen deposit on complainant's underwear." *People v. Sawyer*, 545 N.W.2d 6, 11 (Mich. Ct. App. 1996). The court then went on to hold that Sawyer's theory to the contrary was "highly speculative" and, citing *Brady*, 373 U.S. at 87, held that the circumstances did not merit reversal of Sawyer's conviction. *Sawyer*, 545 N.W.2d at 11-12. Therefore, contrary to the majority's apparent view, the Michigan court's decision is easily read as holding that, because the facts of the attack made it unlikely that the semen stain came from the attacker, the evidence that the semen stain did not come from Sawyer was not "material" for *Brady* purposes. *See Brady*, 373 U.S. at 87 (holding that "the suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment").

---

[1] The mere fact that the semen stain did not belong to Sawyer was of no help to him, as the state had always agreed to that proposition. In fact, the trial court held argument about the semen stain outside of the presence of the jury during trial, and the state's attorney stated clearly that the state believed the semen stain to be completely unrelated to the attack, as it was believed to be from a boyfriend of Miller's, and stated for the record, "[w]e have never alleged, nor will we ever allege in the course of this [sic] proceedings that the semen found on those panties has anything to do with Thomas Sawyer." J.A. I at 397. Therefore, for the semen stain to help Sawyer, he needed further testing against Miller's boyfriend.

"fail[s] to develop the factual basis of a claim in State court proceedings" is not entitled to a federal evidentiary hearing unless he meets certain stringent requirements. 28 U.S.C. § 2254(e)(2). In *Michael Williams v. Taylor*, 529 U.S. 420 (2000), the Supreme Court interpreted the opening clause of § 2254(e)(2) as follows: "a failure to develop the factual basis of a claim is not established unless there is lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *Id.* at 432. The *Williams* Court then explained that a finding of diligence would "depend[] upon whether the prisoner made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court." *Id.* at 435.

Sawyer alleges that he first learned about the existence of the semen stain on Miller's underwear from a police report that was delivered to defense counsel "one or two days before trial." Petitioner's Br. I at 5. When this issue was brought before the trial court, the prosecutor indicated that the police had instructed its laboratory scientist not to test the sample because it had been deposited by Miller's boyfriend. *See supra*. Defense counsel sought forensic testing of the semen stain during and after trial. In November 1994, while this case was before the Michigan Court of Appeals on direct appeal, defense counsel learned about the negative test result pursuant to a FOIA request. Defense counsel then filed a motion for consideration of the "recently discovered *Brady* violation . . . as an issue on appeal." J.A. I at 130. When the state courts rejected this argument,[1] Sawyer filed the instant

---

[1] The dissent argues that the absence of any discussion of the negative test result in the Michigan Court of Appeals's decision is "understandable given the circumstances . . . [because] the court was responding to Sawyer's direct appeal of the judgment entered against him by the trial court, wherein Sawyer challenged the trial court's refusal to permit testing." Slip Op. at 13. However, the dissent does not address the fact that Sawyer's supplemental brief in the state court of appeals raised the suppression of the negative test result "as an issue on appeal" in addition to requesting forensic testing of the underwear. J.A. I at 130-32. Moreover, the dissent does not consider the conditional language in the Michigan Court of Appeals's decision that suggests a lack of knowledge

habeas petition in the district court.  We therefore conclude that AEDPA's standard for an evidentiary hearing does not apply because Sawyer was diligent in pursuing his *Brady* claim in the Michigan courts.

The question before us, then, is whether the district court abused its discretion in denying Sawyer an evidentiary hearing in federal court.  We have indicated that a habeas petitioner is generally entitled to such a hearing if he "alleges sufficient grounds for release, relevant facts are in dispute, and the state courts did not hold a full and fair evidentiary hearing." *Stanford v. Parker*, 266 F.3d 442, 459 (6th Cir. 2001) (quoting *Wilson v. Kemna*, 12 F.3d 145, 146 (8th Cir. 1994)), *petition for cert. filed*, -- U.S.L.W. ---- (U.S. Apr. 29, 2002) (No. 01-10008).

Sawyer petitions this court for habeas relief on the basis of an alleged violation of *Brady*, which requires the prosecution to provide evidence that is both favorable to the defendant and material to his guilt or innocence. *Brady*, 373 U.S. at 87. Favorable evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Kyles v. Whitley*, 514 U.S. 419, 433 (1995) (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)). The relevant question is whether Sawyer in the absence of material evidence "received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Id.* at 434.

The undisclosed negative result of the test on the semen stain is exculpatory if Sawyer can establish that the perpetrator of the crime for which he was convicted was the

---

of any negative test result, much less its suppression.  *See People v. Sawyer*, 545 N.W.2d 6, 12 (Mich. Ct. App. 1996) (per curiam) ("Defendant claims that, if tested, this evidence might have exculpated him."); *id.* (stating that the police had probable cause to arrest Sawyer "even if the semen stain had been tested and linked to another person"). As will be discussed below, it is this failure to recognize Sawyer's *Brady* claim as such that we conclude was an unreasonable application of *Brady*.

---

**CONCURRING IN PART, DISSENTING IN PART**

---

BOGGS, Circuit Judge, concurring in part and dissenting in part.  I concur in the majority's affirmance of the district court's denial of Sawyer's petition for a writ of habeas corpus in *Sawyer v. Stovall*; however, for the reasons herein, I respectfully dissent from the majority's reversal of the district court's denial in *Sawyer v. Hofbauer*.

The majority's decision as it relates to *Hofbauer* gives short shrift to the very real restrictions AEDPA places upon the power of federal courts to grant writs of habeas corpus for claims adjudicated on the merits by state courts.  According to AEDPA, a federal court may grant a writ of habeas corpus in such a case only where the state court adjudication was contrary to, or involved an unreasonable application of, federal law as set out by the Supreme Court or if the state court decision was based on an unreasonable determination of fact. *See* 28 U.S.C. § 2254(d)(1)-(2).  The majority holds that it is empowered to grant the writ in the present case, because the state court's adjudication of Sawyer's claim based on *Brady v. Maryland*, 373 U.S. 83, 87 (1963), was an unreasonable application of *Brady*.  The majority holds that this is so because the court "fail[ed] even to identify the evidence that was suppressed."  Majority Op. at 11.

While it is true that the opening sentence of the Michigan Court of Appeals's treatment of this issue focuses on the trial court's refusal to order DNA testing on the victim's underwear, rather than on the failure of the state to disclose the fact of the negative test, this is both understandable given the circumstances and not automatically fatal to the reasonableness of the state court's application of *Brady*. First, it is understandable in that the court was responding to Sawyer's direct appeal of the judgment entered against him by the trial court, wherein Sawyer challenged the trial court's refusal to permit testing. J.A. I at 110.  Sawyer discovered

County case, who allegedly deposited the semen on Miller's underwear, was also the perpetrator in the Ingham County case. Joint Appendix II ("J.A. II") at 17-18. We conclude that this sort of logical leap is not one that a jury would have made to find Sawyer not guilty, especially given the fact that the victim in this case identified Sawyer at trial. Although Sawyer casts aspersions on the Michigan State Police's suppression of a negative test result in the Hillsdale County case, the nondisclosure did not constitute a violation of Sawyer's constitutional rights in this case.

### III.  CONCLUSION

For the foregoing reasons, we **REVERSE** the district court's denial of Sawyer's petition for a writ of habeas corpus in *Hofbauer* and **REMAND** for the district court to grant the writ within ninety days, unless the State of Michigan retries Sawyer for the Hillsdale County offense. We **AFFIRM** the district court's judgment in *Stovall*.

source of the semen on Miller's underwear. The Michigan Court of Appeals doubted whether Sawyer could make such a showing:

> The facts of the crime in this case were unlikely to have resulted in a semen deposit on complainant's underwear. Defendant's exculpatory theory about the evidence is highly speculative and reversal is not required on this basis. Moreover, defendant's speculative theory would have required complainant to testify concerning consensual sexual activity with her boyfriend in direct violation of the rape shield statute.

*People v. Sawyer*, 545 N.W.2d 6, 11 (Mich. Ct. App. 1996) (per curiam) (citations omitted). However, Miller testified to wearing clean clothing on the day of the attack and then giving those clothes to state troopers after the attack. She also testified that the perpetrator had handed her clothing and underwear back to her after making her take them off. Therefore, the existence of a semen stain on Miller's underwear from a source other than Sawyer would have been favorable to him. Although the allegation at trial was that the sole act of sexual penetration was one of fellatio, the perpetrator could have wiped or cleaned himself with Miller's underwear before handing it back to Miller.

The negative test result, which was thus exculpatory, was also material to Sawyer's guilt or innocence. As the State of Michigan itself acknowledges, the evidence against Sawyer "cannot fairly be described as overwhelming." Respondent's Br. I at 29. Because juries may convict a defendant only if the prosecution proves guilt beyond a reasonable doubt, it is reasonably probable that the disclosure of a semen stain on Miller's underwear from a source other than Sawyer would have changed the result of Sawyer's trial.[2]

---

[2] Under Michigan law, "[e]vidence of specific instances of sexual activity showing the source or origin of semen" is admissible if the trial court finds that the "proposed evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its

Having determined that Sawyer has alleged sufficient grounds for release, we next consider whether relevant facts are in dispute. The fact that Sawyer was not the source of the semen stain on Miller's underwear is beyond dispute. Other facts, such as the identity of the person who deposited the semen, are in dispute. However, they are not relevant to the disposition of this case. A prosecutor violates due process when he suppresses evidence that is "favorable to an accused" and "material either to guilt or to punishment." *Brady*, 373 U.S. at 87. It is simply irrelevant whether that or other evidence is unfavorable to someone other than the defendant. The alleged *Brady* violation in this case involves the suppression of the negative test result, which is clearly established by the record before us and which an evidentiary hearing would only confirm. Therefore, instead of remanding this case to the district court, we will examine the merits of Sawyer's *Brady* claim.

**2. *Brady* Claim**

Sawyer argues that we should not defer to the state court's denial of this claim because he was not afforded a full and fair hearing on the issue of the semen stain. We have not yet addressed the question whether a full and fair hearing is a prerequisite to the application of AEDPA's more deferential standards. However, because Sawyer's *Brady* claim has merit even under AEDPA's standards, we leave for another day the question of AEDPA's applicability in the absence of a full and fair hearing in the state courts.

---

probative value." MICH. COMP. LAWS ANN. § 750.520j (West 1991 & Supp. 2002). Because the state trial court did not know about the negative test result, it could not fully assess the probative value of the semen stain in terms of supporting Sawyer's defense. *Cf. People v. Adair*, 550 N.W.2d 505, 510 (Mich. 1996) (stating that the relevant subsection "allows the admission of evidence that is *material* to prove that semen recovered from the complainant . . . was the result of someone other than the defendant . . . [and] *probative* of a defense theory such as misidentification").

Under clearly established Supreme Court precedent, a defendant is entitled to evidence that is both favorable to him and material to his guilt or innocence. *Brady*, 373 U.S. at 87. In this case, the prosecution failed to provide the negative test result of the semen stain on Miller's underwear. We have previously discussed why this evidence was favorable and material. The state court's discussion of Sawyer's *Brady* claim, however, focused on the fact that "the trial court refused to order DNA testing of a semen stain on [Miller]'s underpants"; it did not address the fact that the police had tested the semen stain against Sawyer's blood type, obtained a negative result, and then suppressed this evidence. *Sawyer*, 545 N.W.2d at 11. Yet it was the suppression of the negative test result that gave rise to Sawyer's *Brady* claim, because the mere existence of the semen stain was disclosed to defense counsel before trial. We conclude that the Michigan courts' inapposite analysis — indeed, its complete failure even to identify the evidence that was suppressed — was an unreasonable application of *Brady* and therefore reverse the district court's denial of habeas relief on this claim.

**B.  *Sawyer v. Stovall***

In this case, Sawyer seeks habeas relief from his Ingham County conviction on the basis of the *Brady* violation in the Hillsdale County case, asserting that the two cases are connected. In dismissing Sawyer's *Brady* claim, which it deemed "rambling and confused," the Michigan Court of Appeals observed that the issue "deal[t] with evidence in other cases not relevant here." *People v. Sawyer*, 564 N.W.2d 62, 65 (Mich. Ct. App. 1997). Although this conclusion appears rather summary to us, we affirm the district court's dismissal of the *Brady* claim in this case, having determined that Sawyer is not entitled to habeas relief whether we review de novo or under AEDPA. There is no reasonable probability that the disclosure of the negative test result in the Hillsdale County case would have changed the result of Sawyer's trial in Ingham County. As the district court noted, the evidence may exculpate Sawyer in this case only if Sawyer can make the "tricky" argument that the perpetrator in the Hillsdale