NOT RECOMMENDED FOR PUBLICATION
File Name: 07a0573n.06
Filed: August 10, 2007

No. 04-2272

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| MICHAEL ALEXANDER BROWN, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| KENNETH McKEE, Warden, | ) | EASTERN DISTRICT OF MICHIGAN |
| | ) | |
| Respondent-Appellee. | ) | |
| | ) | OPINION |
| | ) | |

**Before: GUY, BATCHELDER, and GILMAN, Circuit Judges.**

**RONALD LEE GILMAN, Circuit Judge.** Michael Alexander Brown appeals from the

denial of his petition for a writ of habeas corpus. In 1998, Brown was convicted by a Michigan jury

of second-degree murder, two counts of assault with intent to commit murder, and one count of

possession of a firearm during the commission of a felony. He is presently serving a life sentence

for the murder conviction, concurrent terms of 50 to 100 years for each assault conviction, and two

years for the firearm conviction that are to be served consecutively to the prior sentences.

After unsuccessful appeals in the Michigan court system, Brown filed a petition for a writ

of habeas corpus in federal district court. The district court denied Brown's petition on the merits,

despite the State's argument that many of the claims were unexhausted. This court granted a

Certificate of Appealability on all of Brown's claims. For the reasons set forth below, we **AFFIRM**

the judgment of the district court.

## I. BACKGROUND

### A.      Factual history

On the morning of January 26, 1997, Brown, Carl Johnson, and Harvey Witcher were sitting

in Witcher's Cadillac on a street in Detroit. Johnson and Witcher had been smoking heroin and

crack cocaine since the previous evening. Brown had consumed white wine and Champale, a malt

liquor beverage. A handgun and a shotgun were present in the car. At some point in the early

morning, Brown and Witcher struggled over the handgun and Johnson was fatally shot. Witcher was

shot in the hip as he fled from the scene. Brown drove the Cadillac to pick up his eight-year-old

daughter from Witcher's house. He then drove back to the vicinity of the shooting. Brown's own

car, a white Chevrolet Beretta, was parked nearby. Inside was a loaded shotgun with blood running

down the barrel. Johnson was found lying face-down in the street where the shootings had occurred.

Two Detroit police officers called to the scene pursued Brown and confronted him when he

and his daughter exited the Cadillac and began walking away. There was a factual dispute at trial

as to whether Brown had a gun when he got out of the car and whether he shot at the police officers.

No gun was ever recovered. During the encounter between Brown and the police, one of the officers

shot Brown in the left arm. Brown and his daughter attempted to flee, running in different directions.

The police arrested Brown in the area at approximately 7:30 a.m. They also located and took

custody of his daughter.

Brown was treated at a Detroit hospital for the gunshot wound to his arm. From there, he was taken to the Detroit Police Department, where he was questioned. He spoke with a police officer in an unrecorded session but refused to sign a written version of his statement. His daughter was also questioned, without either of her parents present, prior to being released. Brown was held for four days before being arraigned.

## B.      Procedural history

In 1998, a Michigan jury found Brown guilty of one count of second degree murder, two counts of assault with intent to commit murder, and one count of possessing a firearm during the commission of a felony. Brown appealed as of right to the Michigan Court of Appeals, raising eight claims, all of which were denied as meritless. *See People v. Brown*, No. 212123, 2001 WL 718607 (Mich. Ct. App. June 26, 2001) (per curiam). Proceeding pro se, Brown then filed a delayed application for leave to appeal with the Michigan Supreme Court, raising six claims. This application was denied on February 4, 2002. He filed no state postconviction proceedings.

Brown filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 on February 3, 2003. In his habeas petition, Brown requested an evidentiary hearing and reversal of his state-court convictions. The magistrate judge assigned to the case submitted a 64-page Report and Recommendation in June of 2004. He concluded that none of Brown's claims had merit, without first determining whether Brown had exhausted all of the claims in state court. Brown filed timely objections to the magistrate judge's Report and Recommendation. In September of 2004, the district court overruled Brown's objections and denied Brown's petition for a writ of habeas corpus.

Shortly thereafter, Brown filed a notice of appeal, which the district court construed as a motion for a Certificate of Appealability (COA) pursuant to 28 U.S.C. § 2253. It denied the motion in toto. Brown then sought a COA from this court on all of the claims he raised below, as well as two additional issues. In May of 2005, a judge of this court granted Brown's motion for a COA as to all of the issues raised and ordered that counsel be appointed to represent him. *Brown v. McKee*, No. 04-2272 (6th Cir. May 23, 2005) (order granting COA and ordering appointment of counsel).

On appeal, however, Brown has focused his argument on his claims of ineffective assistance of counsel and prosecutorial misconduct. He seeks to have his case remanded with instructions to vacate his convictions. In the alternative, he requests an evidentiary hearing on his ineffective-assistance-of-counsel claim. He specifically argues that his trial counsel provided ineffective assistance in not moving to suppress a custodial statement attributed to Brown, and that prosecutorial misconduct so tainted the state-court trial proceedings as to render them fundamentally unfair.

Although Brown raised numerous other issues in his state-court appeals and in his petition for a writ of habeas corpus before the district court, he has not briefed them on appeal and, for the reasons stated in the magistrate judge's well-reasoned Report and Recommendation to the district court, they are meritless. We will therefore concentrate our analysis on the two issues briefed by Brown.

## II. ANALYSIS

**A.    Standard of review**

In an appeal from a denial of habeas relief, we review a district court's legal conclusions de novo, but will not set aside the court's factual findings unless they are clearly erroneous. *Hill v. Hofbauer*, 337 F.3d 706, 710 (6th Cir. 2003). A federal court can reach the merits of a habeas petition without first determining if the claims raised are procedurally defaulted where the grounds for relief are meritless. 28 U.S.C. § 2254(b)(2); *see also Cain v. Redman*, 947 F.2d 817, 820 (6th Cir. 1991). Because Brown filed his petition for habeas relief in 2003, we review it under the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214. *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). AEDPA provides that a federal court

> may not grant a writ of habeas to a petitioner in state custody with respect to any claim adjudicated on the merits in state court unless (1) the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" . . . or (2) the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings."

*Taylor v. Withrow*, 288 F.3d 846, 850 (6th Cir. 2002) (quoting 28 U.S.C. § 2254(d)).

A state-court decision is considered "contrary to . . . clearly established Federal law" if it is "diametrically different, opposite in character or nature, or mutually opposed." *Williams v. Taylor*, 529 U.S. 362, 405 (2000) (emphasis and quotation marks omitted). Alternatively, to be found an "unreasonable application of . . . clearly established Federal law," the state-court decision must be "objectively unreasonable" and not simply erroneous or incorrect. *Id*. at 409-11.

AEDPA requires federal courts to accord a high degree of deference to the findings of fact made by the state courts. As stated in *McAdoo v. Elo*, 365 F.3d 487 (6th Cir. 2004),

> [a] federal court is to apply a presumption of correctness to state court findings of fact for habeas corpus purposes unless clear and convincing evidence is offered to rebut this presumption. The appeals court gives complete deference to the federal district court's and state court's findings of fact supported by the evidence.

*Id*. at 493-94 (citations omitted).

**B.      Ineffective assistance of counsel**

Brown contends that he was denied his Sixth Amendment right to the effective assistance of counsel when his appointed trial attorney failed to move to suppress a custodial statement that was attributed to Brown. The statement was taken by the police while Brown was being held at the Detroit Police Department on the day of his arrest.

According to Brown, the police did not advise him of his *Miranda* rights. He also contends that he asked for a lawyer, but that his request was ignored. Brown further argues that when he asked about his daughter's whereabouts, the police threatened to "shuffle" her through the juvenile system if Brown did not cooperate with them. At that point, Brown says that he "submitted" to police questioning. The police did not record the interrogation. They instead created a written statement for Brown to sign. Brown contends that the police "interpolated" additional statements that he had not made into the written document. Rather than sign the statement, Brown claims that he wrote on the top of each page that he had requested to have an attorney present. The statement produced by the State during discovery bears no such markings.

Brown's account of the circumstances surrounding the statement is disputed by the State. Detective Collins testified at trial that he did inform Brown of his *Miranda* rights, and did nothing

to coerce Brown's statement. He further denied that Brown requested an attorney or asked to make a phone call.

Brown's appointed counsel did not move to suppress Brown's statement prior to or during trial. The statement was read into evidence during Detective Collins's testimony. According to the statement, Brown recounted that he was in the back seat of a car driven by Witcher on the night of the shooting. Carl Johnson was in the front passenger seat of the car. Witcher asked about Brown's wedding band. Brown gave the band to Witcher to examine. At some point, Brown asked Witcher to return the wedding band. The men then "exchanged words" and Witcher pulled a gun. During an ensuing tussle, the gun went off. Witcher and Brown "jumped out of the car." At this point Brown had the gun. Witcher started running from the car and Brown "shot at Harvey while he was running." Brown then got back in Witcher's car, with the gun, and drove to pick up his eight-year-old daughter from Witcher's house.

At trial, Brown testified on his own behalf. His version of events differed from the custodial statement in several important respects. Brown said that while he, Johnson, and Witcher sat in Witcher's car, Witcher pointed a gun at Brown and demanded Brown's "shit." Brown threw his car keys at Witcher's chest and tried to get control of the gun. During the struggle, the gun discharged and then fell to the front seat of the car. The two men reached for the gun at the same time. Brown grabbed the gun first, and it again discharged. All three men exited the car, Witcher on one side, Brown and Johnson on the other. Johnson bumped into Brown once they were out of the car, and the gun discharged a third time. The gun then fell from Brown's hand and he never saw it again. Driving Witcher's car, Brown went to pick up his daughter from Witcher's house.

Prior to closing arguments, Brown personally moved for a mistrial, for an evidentiary hearing, and for substitution or removal of counsel. He stated that he had asked his appointed attorney to move to suppress his custodial statement, but that his attorney had failed to do so. Brown also sought an evidentiary hearing on the voluntariness of the statement under *People v. Walker*, 132 N.W.2d 87 (Mich. 1965). *Walker* holds that a trial court presented with a pretrial objection to the voluntariness of a confession must hold an evidentiary hearing to determine the issue of voluntariness. *Id.*; *see also People v. Leonard*, 264 N.W.2d 130, 132 (Mich. Ct. App. 1978) (holding that a *Walker* hearing must be held if the defendant moves for it before trial).

If the defense moves for a *Walker* hearing during trial, despite failing to do so prior to trial, the trial court may in its discretion hold an evidentiary hearing. *People v. Soltis*, 304 N.W.2d 811, 812 (Mich. Ct. App. 1981). The defendant bears the burden of raising the claim of voluntariness and of developing a record, but the prosecution bears the burden of proving voluntariness by a preponderance of the evidence. *People v. Akins*, 675 N.W.2d 863, 877-78 (Mich. Ct. App. 2003).

Although present in the courtroom when Brown made his pro se motions, Brown's counsel remained silent. The trial judge denied Brown's motion for a mistrial. As to Brown's contention that his custodial statement was coerced and should be the subject of an evidentiary hearing, the judge decided that the jury had heard both Brown's version and the police version of the statement and that an evidentiary hearing was not required. The judge also ruled that any motion to suppress would have been frivolous. Finally, Brown's motion for substitution or removal of counsel was implicitly denied as meritless when the trial court disagreed with the grounds that Brown gave on the record. It then instructed him to "step down and let us proceed with this matter," and

admonished him by saying that, "nothing that you said, so far, is of any value whatsoever." The trial court did not directly address Brown's argument that his counsel was ineffective because counsel had failed, despite Brown's request, to file a pretrial motion for an evidentiary hearing on the voluntariness of Brown's custodial statement.

Reviewing Brown's appeal, the Michigan Court of Appeals determined that "[b]ecause the record does not factually support defendant's claims of coercion," Brown's claim of ineffective assistance of counsel failed. The appellate court's treatment of Brown's argument that his counsel was ineffective for failing to move for a *Walker* hearing consists of only two sentences. Brown now argues that the Michigan Court of Appeals was objectively unreasonable in its application of relevant Supreme Court caselaw to the facts of his case. He contends that the dearth of factual development in the record supports his claim that his counsel was ineffective in failing to contest the admissibility of the allegedly involuntary statement.

To show ineffective assistance of counsel, a petitioner must satisfy the familiar *Strickland* two-prong test. He must first show that (1) counsel's performance was constitutionally deficient, and then must show that (2) this deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, a petitioner must overcome the "strong presumption that an attorney's performance falls within the wide range of reasonable professional assistance." *Barnes v. Elo*, 339 F.3d 496, 502 (6th Cir. 2003) (citation and quotation marks omitted).

The magistrate judge provided a thoughtful and well-reasoned analysis of Brown's claim of ineffective assistance of counsel for failure to suppress the custodial statement. Concluding that a motion to suppress would have been meritless, the magistrate judge found no ineffective assistance

of counsel. This conclusion rested in part on the fact that "[t]rial counsel's failure to bring a meritless suppression motion cannot constitute ineffective assistance." *United States v. Tisdale*, 195 F.3d 70, 73-74 (2d Cir. 1999).

The failure of the police to record Brown's interrogation also provided insufficient ground for a motion to suppress. Neither federal nor Michigan law requires suppression solely on the basis that a police interrogation was not electronically recorded. *United States v. Dobbins*, No. 96-4233, 1998 WL 598717, at *4 (6th Cir. Aug. 27, 1998) ("[F]ederal law does not require that a state electronically record custodial interrogations and confessions"); *United States v. Short*, 947 F.2d 1445, 1451 (10th Cir. 1991), *cert. denied*, 503 U.S. 989 (1992) (noting that there is no caselaw supporting the defendant's position that the police should have recorded his interrogation); *People v. Fike*, 577 N.W.2d 903, 906 (Mich. Ct. App. 1998) (declining to interpret the Michigan Constitution to require electronic recording of custodial interrogations).

The remaining basis for Brown's motion to suppress was his claim of coercion. Specifically, Brown contended that his statement was involuntary because he acceded to Detective Collins's questions only after the police allegedly threatened to send Brown's daughter through the juvenile system. During his trial testimony, however, Brown did not contend that the statement was involuntary or that the police threatened him about his daughter, but rather that he refused to sign because the police had allegedly inserted things that he had not said into the written version. The Michigan Court of Appeals limited its review to those mistakes that were apparent from the record because no evidentiary hearing had been held, and concluded that there was no evidence to support

Brown's claim of coercion. Accordingly, the appeals court determined that the claim failed. The magistrate judge found likewise.

Brown now argues that his counsel's ineffectiveness is the very reason why the record does not support his claim. But the record in fact reflects that Brown engaged in self-help on at least two occasions. At the close of all the proof at his trial, Brown asked the court for an evidentiary hearing on his claim that his counsel had failed to move to suppress the allegedly involuntary statement. Brown also made an untimely motion for a *Ginther* hearing on the ground that his counsel had provided ineffective assistance for failing to raise Brown's defense of "good character," contending that he would have been acquitted otherwise. *See People v. Ginther*, 212 N.W.2d 922, 924 (Mich. 1973) (holding that "[w]hen a defendant asserts that his assigned lawyer is not adequate or diligent or asserts . . . that his lawyer is disinterested, the judge should hear his claim and, if there is a factual dispute, take testimony and state his findings and conclusion"). Both motions were denied by the trial court.

The standard for determining whether a petitioner is entitled to an evidentiary hearing under AEDPA is stringent:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
> (A)    the claim relies on—
>         (i)    a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>         (ii)    a factual predicate that could not have been previously discovered through the exercise of due diligence; and

      (B)     the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2)(A) & (B).

When determining whether § 2254(e)(2) applies to a request for an evidentiary hearing, the question is not whether the prisoner has succeeded in developing the record, but rather whether he has been diligent in his attempts to do so. *Williams v. Taylor*, 529 U.S. 420, 432, 435 (2000) (holding that a prisoner has been diligent if he "made a reasonable attempt, in light of the information available at the time, to investigate and pursue the claims in state court") The success of those efforts is not dispositive. Instead, diligence "require[s] in the usual case that the prisoner, at a minimum, seek an evidentiary hearing in state court in the manner prescribed by state law." *Id*. at 437. "If there has been no lack of diligence at the relevant stages in the state proceedings, the prisoner has not 'failed to develop' the facts under § 2254(e)(2)'s opening clause, and he will be excused from showing compliance with the balance of the subsection's requirements." *Id*. at 437.

We conclude that Brown made a reasonable attempt to develop the factual basis for his involuntary-statement claim. In such instances, a prisoner "is generally entitled to an evidentiary hearing if he alleges sufficient grounds for release, relevant facts are in dispute, and the state courts did not hold a full and fair evidentiary hearing." *Sawyer v. Hofbauer*, 299 F.3d 605, 610 (6th Cir. 2002) (citation and quotation marks omitted). There is no dispute that the state court did not hold an evidentiary hearing. We therefore consider whether Brown has alleged sufficient grounds for release and whether relevant facts are in dispute. *See id*.

At trial, Brown's attorney conducted a *voir dire* of Detective Collins about Brown's *Miranda* rights and the subsequent interrogation. Collins testified that he informed Brown of his *Miranda* rights prior to questioning. He further stated that Brown did not request a lawyer verbally or in writing, was not under the influence of medication for his gunshot wound, did not request medication or food, and did not ask to make any phone calls. Collins denied that Brown ever wrote anything down on either the *Miranda* form or on the write-up of the interrogation. In addition, Collins testified that he and Brown were alone in the interrogation room, the interrogation was not recorded, and Brown was not handcuffed or restrained at any point. After this *voir dire*, the trial court admitted Brown's custodial statement and Collins read it into the record.

Neither Brown nor his attorney raised any allegation at trial that the police had threatened to send Brown's eight-year-old daughter through the juvenile system as a way to get Brown to talk. In fact, this allegation appeared for the first time in Brown's motion for rehearing addressed to the Michigan Court of Appeals. To be sure, threats regarding a defendant's children may be sufficient to render a confession involuntary. *Lynumn v. Illinois*, 372 U.S. 528, 534 (1963) (finding a confession made only after the police told the defendant that her children would be taken from her to be involuntary). But that is not the situation here. Brown did not claim that his statement was coerced when he testified at trial. He did not raise coercion in his motion to suppress the statement. Instead, he focused on his allegation that the police "interpolated" things that he had not said and that he could not sign it for that reason. On appeal, Brown concedes that there was "evidence at trial that contradicted Mr. Brown's offers of proof," but contends that this evidence constituted "inconsistencies" that require "at a minimum" that we remand the issue for an evidentiary hearing.

After a careful review of the record, we do not find the relevant facts to be in dispute. *See*

*Sawyer*, 299 F.3d at 610. We therefore conclude that Brown cannot demonstrate that he was entitled

to an evidentiary hearing.

**C.      Prosecutorial misconduct**

Brown's remaining claim, as set forth in his briefs to this court, is that his conviction was so

tainted by prosecutorial misconduct that it violated his due process rights. During the State's closing

argument, Brown claims that the prosecutor improperly vouched for Witcher as its key witness,

argued facts not in evidence, and disparaged both Brown and his defense counsel. Brown raised

claims of improper vouching for a witness and improper disparagement of defense counsel to the

Michigan Court of Appeals, the Michigan Supreme Court, and the federal district court. In his

motion for rehearing to the Michigan Court of Appeals, Brown raised claims of improper argument

of facts not in evidence and improper disparagement of the defendant. He included these claims in

his delayed motion for leave to appeal to the Michigan Supreme Court.

Because the Michigan Supreme Court denied his delayed motion in a form order, he now

contends that "it cannot be presumed that the Michigan Supreme Court declined to review Mr.

Brown's issues on anything but their potential merits." *See Harris v. Reed*, 489 U.S. 255, 263 (1989)

("[A] procedural default does not bar consideration of a federal claim on . . . habeas review unless

the last state court rendering judgment in the case clearly and expressly states that its judgment rests

on a state procedural bar.") (citation and quotation marks omitted). We note that neither Brown nor

his counsel objected to any of the now-challenged remarks at trial. Like the district court, however,

we need not consider the question of procedural default because the claim can be dismissed as meritless.

In light of AEDPA's limitations on appellate review, we apply "a two-step test to determine whether prosecutorial misconduct violates a [d]efendant's due process rights." *Spisak v. Mitchell*, 465 F.3d 684, 713 (6th Cir. 2006). We first consider "whether the prosecutor's remarks were improper." *Id*. If so, then the court "appl[ies] the four-factor test set forth in *United States v. Carroll*, 26 F.3d 1380, 1385 (6th Cir.1994), to determine 'whether the impropriety was flagrant' and thus violated the defendant's due process rights." *Macias v. Makowski*, 291 F.3d 447, 452 (6th Cir. 2002) (citation omitted). The four factors to consider are: "(1) whether the conduct and remarks of the prosecutor tended to mislead the jury or prejudice the defendant; (2) whether the conduct or remarks were isolated or extensive; (3) whether the remarks were deliberately or accidentally made; and (4) whether the evidence against the defendant was strong." *Id*. To entitle the petitioner to habeas relief, a prosecutor's remarks must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). The entire proceeding must be examined in order to make this determination. *Id*.

### 1. *Improper vouching*

A prosecutor vouches for a witness when the prosecutor "supports the credibility of a witness by indicating a personal belief in the witness's credibility[,] thereby placing the prestige of the [prosecutor's office] behind that witness," or through "comments that imply that the prosecutor has special knowledge of facts not in front of the jury." *United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 1999). In the present case, the prosecutor stated in her rebuttal closing argument as follows:

> So, who would have, in this case, the biggest motive to deceive? The person who had the most to lose. And that's Michael Brown. Don't feel sorry for him. But realize, recognize, he's the only person who has any reason or need to deceive you. Harvey Witcher wasn't charged. There's no reason to lie. He can tell you what happened. No matter what he says, he still got to go home; right?

The Michigan Court of Appeals found that this argument was "properly based on the evidence at trial."

When reviewing Brown's habeas petition, the magistrate judge cited the *Francis* standard and concluded that the prosecutor "did not engage in either of these two impermissible practices." Rather, the comments made "did no more than respond substantially [to defense counsel's statements] in order to 'right the scale.'" The magistrate judge concluded that the prosecutor "did not personally guarantee Witcher's veracity, not did she imply that facts not presented at trial would bolster his testimony." Prosecutorial misconduct "must be so pronounced and persistent that it permeates the entire atmosphere at trial" or "so gross as probably to prejudice the defendant" in order to violate a defendant's right to a fair trial. *United States v. Hurst*, 951 F.2d 1490, 1503 (6th Cir. 1991) (citations and quotation marks omitted). Accordingly, the magistrate judge determined that the prosecutor's remarks were not improper.

The remarks nonetheless suggested that the prosecutor knew something that the jury did not: namely, whether Witcher had been charged. Assuming without deciding that the remarks were improper, we must apply *Carroll*'s four-factor test to determine whether they were "flagrant." There is no evidence, beyond Brown's conclusory assertions, that the prosecutor intended to mislead the jury with her remarks. Our review of the record suggests that the prosecutor was instead responding to the closing argument by counsel for Brown, where Witcher's credibility and

truthfulness were repeatedly and vigorously challenged. The prosecutor's comments were not extensive. Rather, they were confined to a few brief sentences in an otherwise-lengthy closing argument made after a five-day trial. Although the State does not argue that the remarks were accidental, the proof against Brown was substantial, which weighs against a conclusion that these comments deprived him of his right to a fair trial. Brown's counsel, moreover, failed to object to the remarks at trial. Even though the district court did not give a curative instruction after the prosecutor's remarks, it did instruct the jury prior to the commencement of deliberations that argument by counsel was not evidence. For all of these reasons, we adopt the well-reasoned recommendation of the magistrate judge and conclude that Brown is not entitled to habeas relief on this claim.

### 2. *Improper disparagement of defense counsel*

Brown also argues that the prosecutor improperly disparaged his defense counsel during the prosecutor's closing argument. The allegedly improper comments were in response to a portion of the defense argument. In his closing argument, defense counsel discussed the unreliability of eyewitness testimony in some detail. He stated in pertinent part as follows:

> When I walked over here I put some nickels on the this [sic] railing. You all can see the nickel sitting there. If you take this piece of brass, and you put it over the nickel, you don't have nickels anymore. Our eyes can be fooled easily. It's a simple trick.

The prosecutor responded in her rebuttal closing argument as follows:

> You don't deceive someone unless you're you [sic] intend to deceive them. When Mr. Fenner did the trick with the nickel, he wanted to deceive you. When a magician, when you pay to go see a magician or a magician comes to a party, or you see a magician, what's his intent? To deceive you. His intent is to show you slight [sic]

of the hand.  These are the things that can be done.  Right?  That's his intention.  It's to deceive you.

On direct appeal, the Michigan Court of Appeals rejected Brown's claim that these remarks constituted disparagement of Brown's defense counsel.  Instead, the court reasoned that the "challenged remarks . . . were responsive to defense counsel's closing argument."  The magistrate judge similarly noted that "[t]he type of comment challenged by petitioner, accusing defense counsel of trying to trick the jury and of being like a magician, repeatedly have been held to fall short of amounting to a deprivation of due process."  In addition, the magistrate judge found that the prosecutor's comment was "invited by or was responsive to the [closing argument] of the defense."  *See Darden v. Wainwright*, 477 U.S. 168, 182 (1986).

Brown argues that the Michigan Court of Appeals made "an unreasonable determination of the facts in light of defense counsel's closing argument."  The defense's closing argument dealt in detail with the manipulability and unreliability of eyewitness testimony.  Brown argues that his counsel was not "trying to deceive the jurors" and, accordingly, did not invite the prosecutor's response.

In sum, Brown argues that the prosecutor's closing argument "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  *See Darden*, 477 U.S. at 181 (citation and quotation marks omitted).  But Brown fails to explain how the prosecutor's comments violated his due process rights in the context of the present case.  When reviewing a claim of prosecutorial misconduct, a court "may consider, along with other factors, the potential of the

remarks to prejudice the defendant or confuse the jury and the strength of the proof against the defendant." *United States v. Castro*, 908 F.2d 85, 89 (6th Cir. 1990).

This court has previously held that "[a] prosecutor commenting that the defense is attempting to trick the jury is a permissible means of arguing so long as those comments are not overly excessive or do not impair the search for the truth." *United States v. August*, 984 F.2d 705, 715 (6th Cir. 1992). Here, the prosecutor's comments constituted only a small portion of her closing argument and there is no suggestion that the jury was confused by the remarks. We therefore conclude that this claim is meritless.

### 3. *Arguing facts not in evidence*

In her closing argument, the prosecutor stated that the police officers who stopped Brown could easily see that he was carrying a handgun because they confronted him at 7:00 a.m., "when the sun's at its brightest." Brown contends, however, that the officers had testified that it was still dark when they confronted him. The magistrate judge did not consider Brown's claim that the prosecutor improperly argued facts not in evidence. This might be because the claim does not appear in Brown's petition for a writ of habeas corpus, although he did raise it in his delayed motion for leave to appeal to the Michigan Supreme Court. Because there is no mention in Brown's habeas petition of the daylight conditions at the time the Detroit police confronted him that morning, we need not further consider this point.

Brown also contends that the Michigan Court of Appeals made an unreasonable determination of the facts when it concluded that the prosecutor's statements relating to Witcher were supported by the evidence at trial. Specifically, he argues that no evidence was introduced

about whether Witcher had been charged with any crimes relating to the events of January 26, 1997. This is essentially a restatement of his improper-vouching argument, which we have discussed above in Part II.C.1. To be sure, the prosecution may not rely on facts not in evidence in closing arguments. *United States v. Wiedyk*, 71 F.3d 602, 610 (6th Cir. 1995). But a claim of prosecutorial misconduct must be evaluated by looking at the allegedly improper statements in the context of the entire case. Even assuming that the remarks were improper, the record does not support a determination that they were flagrant and thereby deprived Brown of a fair trial. As noted above, the remarks were not extensive, they were offered in response to the repeated and vigorous attacks on Witcher's credibility in the closing argument for the defense, and the evidence against Brown was substantial. We therefore conclude that Brown's claim of improper argument of facts not in evidence is meritless.

### 4. *Improper disparagement of the defendant*

Brown's final contention is that the prosecutor's repeated description of him as a "snake" who "slithered on his underbelly" violated his due process rights. Neither the magistrate judge nor the district court addressed this claim, although Brown did raise it in his petition for a writ of habeas corpus: "The prosecutor continuously, without any objection from the defense, disparaged Mr. Brown's character by repeatedly and consistently referring to him as a 'snake' who 'slithers' on his 'underbelly' before the jurors." Our review of the prosecutor's closing argument indicates that she referred to Brown once as a liar, once as a coward, and approximately four times as a snake who slithers on his underbelly.

The Supreme Court has found that offensive and inflammatory comments, although unquestionably improper, do not necessarily deprive the defendant of a fair trial. *Darden*, 477 U.S. at 179-80 (finding that the prosecutor's reference during closing argument to the defendant as an "animal" who should not be let out of prison except on a leash and for whom the only effective punishment was the death penalty did not deny the defendant a fair trial). So too with this case. The prosecutor's references to Brown as a liar, a coward, or a snake "did not manipulate or misstate the evidence." *Id*. at 182. Although the comments are reprehensible and inappropriate, they did not deprive Brown of a fair trial. Here, as in *Darden*, there was substantial evidence against Brown, including his own trial testimony, in which he admitted being in the car, struggling for the gun, holding the gun, and shooting the gun. We therefore conclude that this claim is meritless.

## III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.